**2022 IL 125959**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

―――――――――

(Docket No. 125959)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
OMEGA MOON, Appellant.

*Opinion filed April 7, 2022.*

JUSTICE OVERSTREET delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Garman, Theis, Neville, Michael J. Burke, and Carter concurred in the judgment and opinion.

## OPINION

¶ 1     A jury found defendant, Omega Moon, guilty of domestic battery. The Cook County circuit court, however, failed to administer a trial oath to the jury at any time prior to the jury rendering its verdict. Defendant, therefore, was convicted by a jury that was never sworn to try the case. During the trial, defendant did not object to the unsworn status of the jury until after the jury rendered its guilty verdict.

Defendant raised the issue for the first time in her posttrial motion requesting a new trial. The circuit court denied the posttrial motion, recognizing that the error occurred but concluding that the error was harmless.

¶ 2         The appellate court agreed that the circuit court's failure to administer a trial oath to the jury was "clear error." 2020 IL App (1st) 170675, ¶¶ 42, 44. The appellate court, however, concluded that defendant forfeited this error by failing to object at the trial. The appellate court declined to address the error under the plain error rule because, the appellate court concluded, defendant was not prejudiced by the error. *Id.* ¶¶ 45-46.

¶ 3         We are now asked to determine, under plain error principles, whether defendant's trial before an unsworn jury requires automatic reversal without a showing of prejudice to defendant. For the following reasons, we conclude that a reversal of defendant's conviction is required under these circumstances, regardless of the strength of the evidence or any showing of prejudice to defendant. Therefore, we reverse the appellate and circuit courts' judgments and remand to the circuit court for further proceedings.

¶ 4                                    I. BACKGROUND

¶ 5         The State charged defendant with one count of domestic battery, alleging that defendant caused bodily harm to a minor, S.M., in violation of section 12-3.2(a)(1) of the Criminal Code of 2012 (720 ILCS 5/12-3.2(a)(1) (West 2014)). Specifically, the State alleged that on or about June 22, 2014, defendant struck the minor several times with an object that left redness, swelling, and belt buckle-shaped marks on the child's body.

¶ 6         The parties and prospective jurors appeared in court for defendant's jury trial on October 24, 2016. Before jury selection, the circuit court typically administers a *voir dire* oath to the prospective jurors.[1] In the present case, the record does not

---

[1]The handbook for jurors in Illinois advises potential jurors they will be called upon to take the *voir dire* oath. See Petit Juror Handbook, *How a Jury Is Chosen*, Admin. Office of the Ill. Courts, https://www.illinoiscourts.gov/self-help/how-do-i-juror-conduct/petit-juror-handbook/ [https://perma.cc/H5Z7-CN74] (last visited Feb. 24, 2020) ("The entire group of jurors will be asked to rise and to swear or affirm to answer truthfully all questions asked of you concerning your qualifications

establish whether the circuit court administered a *voir dire* oath to prospective jurors at any time prior to or during jury selection.

¶ 7    During *voir dire*, the circuit court asked the prospective jurors whether they understood and accepted the *Zehr* principles: (1) that defendant is presumed innocent of the charges against her, (2) that the presumption of innocence is not overcome unless and until the jury is convinced beyond a reasonable doubt that the defendant is guilty, (3) that the State carries the burden throughout the case of proving defendant's guilt beyond a reasonable doubt, (4) that defendant is not required to prove her innocence or present any evidence at all and may rely on the presumption of innocence, and (5) that defendant does not have to testify and that election not to testify cannot be held against her. See Ill. S. Ct. R. 431(b) (eff. July 1, 2012); *People v. Zehr*, 103 Ill. 2d 472 (1984).

¶ 8    The circuit court further asked each potential juror if he or she would follow the law as given by the court; if he or she would be fair to both sides; if he or she would decide the case without sympathy, bias, or prejudice to either side; and if he or she would wait for all the evidence, arguments, and instructions before reaching a decision. All the prospective jurors indicated that they would follow these instructions.

¶ 9    After the completion of *voir dire* and after the parties selected 12 jurors and 1 alternate juror, the circuit court asked the circuit court clerk, "Would you swear the Jury in?" The transcript of the trial proceeding does not include a verbatim record of the oath that the circuit court clerk administered to the jury. Instead, the transcript includes only the following notation: "(Jury sworn to answer questions.)." In addition, the circuit court judge later acknowledged that she did not hear the circuit court clerk swear in the jury. However, the parties stipulated that the clerk incorrectly administered the *voir dire* oath to the already-selected jurors as follows: "[D]o you solemnly swear or affirm you'll truthfully answer all questions asked concerning your qualifications as jurors in this case?" The parties were finished

---

to act as a juror in the case."); 1 R. Hunter, Trial Handbook for Illinois Lawyers, Criminal § 22:10, at 518 (9th ed. 2002) ("It is the duty of a juror to make full and truthful answers to such questions as are asked, neither falsely stating any fact nor concealing any material matter. The *voir dire* oath administered to jurors prior to their examination enjoins them to tell the complete and entire truth.").

questioning the prospective jurors about their qualifications when the clerk administered this *voir dire* oath, and the parties agree that the circuit court never administered a trial oath[2] to the jury after the completion of jury selection.

¶ 10     During the trial, defendant never objected to the unsworn status of the jury. Instead, defendant raised an issue concerning the lack of a jury oath for the first time in her posttrial motion that she filed after the jurors had already found her guilty. In her motion, defendant requested a new trial because the jurors were never sworn to try the case. Defendant's posttrial motion included the affidavits of two assistant public defenders who did not represent defendant but were, nonetheless, in the courtroom and witnessed the jury's swearing. The two assistant public defenders testified in their affidavits that they witnessed the circuit court clerk administer the *voir dire* oath to the jury instead of a trial oath.

¶ 11     The circuit court denied defendant's posttrial motion. The trial judge took "full responsibility" for the error but ultimately concluded that a trial by an unsworn jury was not *per se* reversible error. Instead, the circuit court concluded, the defendant must show prejudice. The circuit court determined that defendant failed to show prejudice because, during *voir dire*, all potential jurors were admonished regarding the legal principles governing a criminal case and all potential jurors were asked if they could decide the case without prejudice or sympathy and wait for all the evidence, arguments, and instructions before so deciding.

¶ 12     In defendant's direct appeal from the conviction, a majority of the appellate court affirmed the circuit court's judgment, concluding that defendant forfeited the error by failing to object at trial and concluding that the failure to swear the jury with a trial oath, under the facts of this case, did not constitute plain error under either prong of the plain error rule. 2020 IL App (1st) 170675, ¶¶ 42, 44-46.

¶ 13     In its analysis, the majority first held that it "need not resolve the effect under Illinois law of a forfeited claim of a trial by an unsworn jury because the jury here

---

[2]"After the jury has been selected, the jurors will be asked to rise and to swear or affirm to well and truly try the matters at issue and render a true verdict according to the law and the evidence." Petit Juror Handbook, *supra*; see also 725 ILCS 5/115-4(g) (West 2018) ("After the jury is impaneled *and sworn* the court may direct the selection of 2 alternative jurors who shall take the *same oath as the regular jurors*." (Emphases added.)); Ill. S. Ct. R. 434(e) (eff. Feb. 6, 2013) ("After the jury is impaneled *and sworn* the court may direct the selection of alternative jurors, who shall take *the same oath as the regular jurors*." (Emphases added.)).

was not completely unsworn," even though the "jury was given the *voir dire* oath rather than the trial oath just before trial." *Id.* ¶ 43. The majority then agreed that swearing the jury with the wrong oath was "clear error" but concluded that the clear error was not plain error. *Id.* ¶¶ 44-46. The majority held that the error was not reviewable under the first prong of the plain error rule because the evidence was not closely balanced. *Id.* ¶ 44. The majority held that the error was not reviewable under the second prong of the plain error rule because the failure to properly swear the jury did not affect the fairness of the trial or the integrity of the judicial process. *Id.* ¶ 46. On this latter point, the majority explained:

> "Here, the [circuit] court asked every potential juror during *voir dire* if he or she would decide this case without sympathy, bias, or prejudice to either side; if he or she would wait for all the evidence, arguments, and instructions before making up his or her mind; if he or she would follow the law as given by the court; and if he or she would be fair to both sides." *Id.*

Therefore, according to the majority, "those inquiries, and the [circuit] court's other instructions and admonishments, sufficiently addressed the purposes of the trial oath to conclude that the clear error did not affect the fairness of the trial or challenge the integrity of the judicial process." *Id.* The majority, therefore, concluded that "[g]iving the wrong oath was clear error but not plain error under either prong." *Id.*

¶ 14 Justice Connors dissented, disagreeing with her colleagues' conclusion that the circuit court's admonishments, instructions, and inquiries were sufficient to cure the circuit court's failure to administer a trial oath to the jury. *Id.* ¶ 63 (Connors, J., dissenting). The dissent observed that a criminal defendant has a constitutional right to a trial by an impartial jury and that the trial oath is designed to protect that fundamental right. *Id.* ¶ 67. Emphasizing the difference between the *voir dire* oath and the trial oath, the dissent concluded that "[a] jury is not a jury until it is sworn to the trial oath—not the *voir dire* oath." *Id.* ¶¶ 64-66. The dissent also concluded that "the failure to properly swear the jury—that is, administer the trial oath—is structural error" and that, because of the importance of the right involved, defendant's conviction by an unsworn jury requires automatic reversal regardless of the strength of the evidence or a showing of prejudice to the defendant. *Id.* ¶ 67.

¶ 15     We subsequently granted defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Oct. 1, 2019).

¶ 16                                II. ANALYSIS

¶ 17     At the outset, defendant acknowledges that she is asking us to address an issue that she has forfeited by failing to offer a contemporaneous objection when the circuit court tried the case before an unsworn jury. See *People v. Sebby*, 2017 IL 119445, ¶ 48 ("To preserve a purported error for consideration by a reviewing court, a defendant must object to the error at trial and raise the error in a posttrial motion. [Citation.] Failure to do either results in forfeiture."). Defendant asks us to excuse her forfeiture of this error under the plain error rule. See Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court."). Therefore, the central focus of this case is whether defendant's failure to object to the unsworn status of the jury should be excused under the plain error rule.

¶ 18                            A. The Plain Error Rule

¶ 19     The plain error rule is a well-established exception to forfeiture principles, allowing reviewing courts discretion to excuse a defendant's procedural default. *Sebby*, 2017 IL 119445, ¶ 48. The plain error rule is not a constitutional doctrine, but it "has roots in the same soil as due process." *People v. Herron*, 215 Ill. 2d 167, 177 (2005).

¶ 20     This court has framed the plain error rule to serve a dual purpose. *Id.* at 177-78. Initially, Illinois courts were concerned with forfeiture being too harsh of a sanction in cases where a defendant's attorney failed to raise an error before the circuit court. *Id.* at 176. Therefore, we allowed the consideration of forfeited errors "in a close case." *Id.* Over time, the rule evolved to also address "a broader concern with the overall fairness of the defendant's trial." *Id.* Accordingly, to address both of these areas of concern, the plain error rule allows reviewing courts discretion to review forfeited errors under two alternative prongs: (1) when a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the

error, or (2) when a clear or obvious error occurred and the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *Id.* at 186-87. The two prongs are "two different ways to ensure the same thing—namely, a fair trial." *Id.* at 179. Under both prongs, the burden of persuasion remains with the defendant. *Id.* at 187.

¶ 21 We have emphasized that the plain error rule is not "a general saving clause preserving for review all errors affecting substantial rights whether or not they have been brought to the attention of the trial court." *People v. Precup*, 73 Ill. 2d 7, 16 (1978). Instead, it is a narrow exception to forfeiture principles designed to protect the defendant's rights and the reputation of the judicial process. *Herron*, 215 Ill. 2d at 177.

¶ 22 The first analytical step under the plain error rule is to determine whether there was a clear or obvious error. *People v. Sims*, 192 Ill. 2d 592, 621 (2000). Here, as they did in the appellate court, the parties agree that clear error occurred when the circuit court administered the *voir dire* oath, instead of a trial oath, after the completion of jury selection. We agree; this was clear error.

¶ 23 The next step of plain error analysis depends on which prong of the plain error rule the defendant has invoked in seeking a review of a forfeited error. *Sebby*, 2017 IL 119445, ¶ 50. When a defendant seeks review of a forfeited error under the first prong of the plain error rule, the reviewing court must determine "whether the defendant has shown that the evidence was so closely balanced the error alone severely threatened to tip the scales of justice." *Id.* ¶ 51. This first prong of the plain error rule, *i.e.*, the closely balanced evidence prong, "guards against errors that could lead to the conviction of an innocent person." *Herron*, 215 Ill. 2d at 186.

¶ 24 When a defendant seeks review of a forfeited error under the second prong of the plain error rule, the reviewing court must determine "whether the defendant has shown that the error was so serious it affected the fairness of the trial and challenged the integrity of the judicial process." *Sebby*, 2017 IL 119445, ¶ 50. This second prong of the rule, *i.e.*, the substantial rights prong, "guards against errors that erode the integrity of the judicial process and undermine the fairness of the defendant's trial." *Herron*, 215 Ill. 2d at 186. Errors that fall within the purview of the second prong of the plain error rule are "presumptively prejudicial errors—errors that may

not have affected the outcome, but must still be remedied" because the error "deprive[d] the defendant of a fair trial." *Id.* at 185.

¶ 25 In the present appeal, defendant has invoked only the second prong of the plain error rule, arguing that the circuit court's failure to properly swear the jury with a trial oath was structural error that automatically requires a new trial regardless of the closeness of the trial evidence or whether the error affected the outcome of the trial. Accordingly, our analysis focuses on the standards for invoking the second prong of the plain error rule. Whether a clear error constitutes second-prong plain error is a question of law that we review *de novo*. *People v. Johnson*, 238 Ill. 2d 478, 485 (2010).

¶ 26                    B. Second Prong Plain Error Equals Structural Error

¶ 27 As stated above, when a defendant establishes plain error under the second prong of the plain error rule, prejudice to the defendant is presumed regardless of the strength of the evidence or the effect of the error on the trial outcome. *Herron*, 215 Ill. 2d at 187. This is true because, when a trial error is of such gravity that it threatens the integrity of the judicial process, the courts must act to correct the error so that the fairness and the reputation of the process are preserved and protected. *People v. Green*, 74 Ill. 2d 444, 455 (1979) (Ryan, J., specially concurring).

¶ 28 In defining the second prong of the plain error rule, this court has equated second-prong plain error with "structural error." *People v. Glasper*, 234 Ill. 2d 173, 197-98 (2009). An error is typically designated as structural only if it necessarily renders a criminal trial fundamentally unfair or is an unreliable means of determining guilt or innocence. *Id.* at 196. In defining structural errors, the United States Supreme Court has explained that most constitutional errors can be harmless; if a defendant is represented by counsel and tried by an impartial adjudicator, " 'there is a strong presumption that any other [constitutional] errors that may have occurred are subject to harmless-error analysis.' " *Neder v. United States*, 527 U.S. 1, 8 (1999) (quoting *Rose v. Clark*, 478 U.S. 570, 579 (1986)). Therefore, the Supreme Court has applied harmless-error analysis to a wide array of constitutional errors (*Arizona v. Fulminante*, 499 U.S. 279, 306 (1991)) and has recognized an error as "structural," and subject to automatic reversal, only in a "very limited class of cases" (*Johnson v. United States*, 520 U.S. 461, 468 (1997)).

¶ 29 The structural errors identified by the Supreme Court include a complete denial of counsel, denial of self-representation at trial, trial before a biased judge, denial of a public trial, racial discrimination in the selection of a grand jury, and a defective reasonable doubt instruction. *Washington v. Recuenco*, 548 U.S. 212, 218 n.2. These errors affect the framework within which the trial proceeds, rather than mere errors in the trial process itself. *Fulminante*, 499 U.S. at 310. "Put another way, these errors deprive defendants of 'basic protections' without which a 'criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence *** and no criminal punishment may be regarded as fundamentally fair.' " *Neder*, 527 U.S. at 8-9 (quoting *Fulminante*, 499 U.S. at 577-78).

¶ 30 In determining whether an error is structural under the second prong of Illinois's plain error rule, we are not limited to only the class of cases identified by the United States Supreme Court. Instead, we may determine that an error is structural as a matter of state law regardless of whether it is deemed structural under federal law. *People v. Averett*, 237 Ill. 2d 1, 13 (2010). Nonetheless, in analyzing whether an error is structural under the second prong of the plain error rule, we often look to the type of errors that the United States Supreme Court has identified as structural to determine whether the error being considered is comparable. See *id.* ("While the error is serious, it is not comparable to the errors recognized by the Supreme Court as structural."). Our task, then, is to determine whether the circuit court's failure to administer a trial oath to the jury constituted structural error. The foundation for this analysis rests upon defendant's constitutional right to an impartial jury, which is guaranteed not only in the federal constitution but also separately guaranteed by our state's constitution.

¶ 31                              C. Constitutional Right to an Impartial Jury

¶ 32 A criminal defendant's right to an impartial jury is firmly rooted in American jurisprudence. We have described this right as "one of the most revered of all rights acquired by a people to protect themselves from the arbitrary use of power by the State." *People ex rel. Daley v. Joyce*, 126 Ill. 2d 209, 212 (1988). Impartiality is an essential part of this right. A criminal defendant "should never be required to encounter a pre-existing opinion deliberately formed, which the juror believes is true, and which [the defendant] would be obliged to overcome." *Collins v. People*,

48 Ill. 145, 147 (1868). Instead, the defendant "has a right to be tried by men who are wholly impartial, without prepossessions or prejudice against him or his case." *Id.* "The jurors must harbor no bias or prejudice which would prevent them from returning a verdict according to the law and evidence." *People v. Strain*, 194 Ill. 2d 467, 476 (2000).

¶ 33    The federal constitution guarantees criminal defendants the right to an impartial jury in the sixth amendment, which provides, in part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an *impartial jury*." (Emphasis added.) U.S. Const., amend. VI. The sixth amendment of the United States Constitution applies to the states through the fourteenth amendment (U.S. Const., amend. XIV). *Duncan v. Louisiana*, 391 U.S. 145, 149 (1968).

¶ 34    The Illinois Constitution also guarantees criminal defendants the right to an impartial jury and sets out the right in two different places in the document. First, article I, section 8, of the Illinois Constitution provides, in part, that "[i]n criminal prosecutions, the accused shall have the right to *** trial by an *impartial jury*." (Emphasis added.) Ill. Const. 1970, art. I, § 8. This right to an impartial jury was included in Illinois's original constitution that was adopted when the state was first admitted into the Union in 1818, as well as in all subsequent revisions to the Illinois Constitution (Ill. Const. 1818, art. VIII, § 9; Ill. Const. 1848, art. XIII, § 9; Ill. Const. 1870, art. II, § 9). *Coughlin v. People*, 144 Ill. 140 (1893); *People v. Bochenek*, 2020 IL App (2d) 170545, ¶ 36.

¶ 35    The second provision in the Illinois Constitution that guarantees the right to a jury trial is found in article I, section 13, which provides that "[t]he right of trial by jury *as heretofore enjoyed shall remain inviolate*." (Emphasis added.) Ill. Const. 1970, art. I, § 13. Similar "as heretofore enjoyed" phrases were included in the Illinois Constitutions of 1818, 1848, and 1870 (*Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 72 (1994) (citing Ill. Const. 1818, art. VIII, § 6, Ill. Const. 1848, art. XIII, § 4, and Ill. Const. 1870, art. II, § 5)), and this court has held that there is no substantial difference between these provisions (*George v. People*, 167 Ill. 447, 455 (1897)). Therefore, "[t]he right of trial by jury was the same under one constitution as under the other," and the right protected "by each constitution was the right of trial by jury *as it existed at common law*." (Emphasis added.) *Id.*

¶ 36    In fact, this court has long interpreted the phrase "as heretofore enjoyed" to mean "the right of a trial by jury as it existed under the common law and as enjoyed at the time of the adoption of the respective Illinois constitutions." *People v. Lobb*, 17 Ill. 2d 287, 298 (1959). "Thus, it is the common law right to jury trial as enjoyed at the time of the adoption of the 1970 constitution to which 'heretofore enjoyed' refers." (Emphasis omitted.) *Joyce*, 126 Ill. 2d at 215; see also *People v. Bruner*, 343 Ill. 146, 149 (1931) ("The word 'heretofore' evidently relates to the past, and to determine the true meaning of the words 'the right of trial by jury as heretofore enjoyed,' it is necessary to have recourse to the common law of England."); *Sinopoli v. Chicago Railways Co.*, 316 Ill. 609, 616 (1925) ("The provision in each [constitution] means the same thing, which is the right of trial by jury as it existed at common law and was enjoyed at the adoption of the respective constitutions.").

¶ 37    In *Joyce*, we held that there is a difference in the substance of the right to a jury trial afforded under the state and federal constitutions, with our state's constitution offering broader protections. *Joyce*, 126 Ill. 2d at 214, 222. Accordingly, in the present case, we will focus our analysis on the right to an impartial jury in criminal prosecutions as set out in the Illinois Constitution and, specifically, as guaranteed by the "as heretofore enjoyed" clause in our state's constitution.

¶ 38                    D. The Right to a Jury Trial "as Heretofore Enjoyed"

¶ 39    Under the Illinois Constitution, "[t]he phrase 'as heretofore enjoyed' plainly indicates that the drafters intended for certain characteristics of a jury trial to be maintained." *Kakos v. Butler*, 2016 IL 120377, ¶ 13. The phrase, however, does not preserve all the features of the common-law jury trial. *Lobb*, 17 Ill. 2d at 299. Only the "essential features" of a jury trial "known to the common law must be preserved and its benefits secured to all entitled to the right." *People v. Kelly*, 347 Ill. 221, 225 (1931). "The constitutional guarantee of the right of trial by jury is not so inelastic as to render unchangeable every characteristic and specification of the common-law jury system." *Lobb*, 17 Ill. 2d at 299. Only the "essentials" of the common-law jury system must be retained. *Id.*

¶ 40    For example, we have observed that common-law qualifications of jurors, such as the sex of a juror or a requirement that they be "freeholders," are not essential elements of the right of trial by jury. *Kakos*, 2016 IL 120377, ¶¶ 26-27; *People*

*ex rel. Denny v. Traeger*, 372 Ill. 11, 14 (1939) ("It is settled that no one set of qualifications of jurors was engrafted upon the law by any of the constitutional guarantees. Juror qualifications are a matter of legislative control and may differ from those qualifications known to the common law.").

¶ 41     Therefore, in the present case, we must analyze the common law to determine whether a jury sworn with a trial oath was an "essential" part of the right to an impartial jury "as heretofore enjoyed" at the time of the adoption of the 1970 constitution. *Joyce*, 126 Ill. 2d at 212 (our courts "often look to the common law" when determining the essential functions of a jury).[3]

¶ 42                    E. Common-Law Jury Trials Included Jury Oaths

¶ 43     Our review of the common law reveals that the practice of swearing the jury with a trial oath was firmly entrenched in the common-law concept of a trial by jury when each Illinois Constitution was ratified. For example, over 160 years ago, in 1859, when our state was a little over 40 years old, this court stated that the "uniform practice in this State" was to swear juries to try each particular case instead of being sworn for the term. *Barney v. People*, 22 Ill. 160, 160 (1859). This court again emphasized the practice of swearing the jury with an oath in *Kitter v. People*, 25 Ill. 42, 42 (1860), where the parties agreed to try five criminal cases against a single defendant in front of the same jury but the jury was "sworn to try but one case." In reversing the defendant's convictions, this court held that the parties' agreement to try the five cases in front of the same jury "did not remove the necessity of *swearing the jury* in each case." (Emphasis added.) *Id.*; see also *People v. Poole*, 284 Ill. 39, 40 (1918) (holding that the word "impanel" means "the

---

[3]Although our analysis in this case focuses on the jury trial guarantee as set out in the Illinois Constitution, we note parenthetically that, with respect to interpreting the right to an impartial jury established by the sixth amendment to the federal constitution, the United States Supreme Court similarly reviewed the status of the common law prior to the ratification of the sixth amendment in determining whether the sixth amendment's right to an "impartial jury" included a requirement of juror unanimity. See *Ramos v. Louisiana*, 590 U.S. ___, ___, 140 S. Ct. 1390, 1395-96 (2020) (by the time the States ratified the sixth amendment, "unanimous verdicts had been required for about 400 years. If the term 'trial by an impartial jury' carried any meaning at all, it surely included a requirement as long and widely accepted as unanimity.").

final formation by the court of the jury" and is "the act that precedes the *swearing of the jury* and ascertains who are to be *sworn*" (Emphases added)).

¶ 44      Cases from other jurisdictions have also recognized that a jury oath was a common practice at common law. See, *e.g.*, *Commonwealth ex rel. v. Ashe*, 44 Pa. D. & C. 337, 339 (1942) ("At common law, when an accused was brought before the court, he was first arraigned and the indictment was read in English and he was then asked how he would plead; *** if he pleaded not guilty, a jury was called, challenged, *and sworn*, and the trial then proceeded." (Emphasis added.)); *State v. Hartley*, 40 P. 372, 373 (Nev. 1895) ("The common law: 'When the trial is called on, *the jurors are sworn* as they appear to the number of twelve, unless they are challenged by the party.' " (Emphasis added.)).

¶ 45      Looking back to the common law of England, William Blackstone described the criminal trial process in his *Commentaries on the Laws of England*. [4] Blackstone included several references to juries being "sworn" in describing the common-law criminal jury trial in England. 4 William Blackstone, *Commentaries on the Laws of England* 352-55 (1769) ("When the trial is called on, the jurors are to be *sworn*, as they appear, to the number of twelve, unless they are challenged by the party. *** However it is held, that the king need not assign his cause of challenge, till all the panel is gone through, and unless there cannot be a full jury without the persons so challenged. And then, and not sooner, the king's counsel must show the cause: otherwise the juror shall be *sworn*. *** If, by reason of challenges or the default of the jurors, a sufficient number cannot be had of the original panel, a tales may be awarded as in civil causes, till the number of twelve is *sworn*, 'well and truly to try, and true deliverance make, between our sovereign lord the king, and the prisoner whom they have in charge; and a true verdict to give, according to their evidence.' When the jury is *sworn*, if it be a cause of any consequence, the indictment is usually opened, and the evidence marshalled, examined, and enforced by the counsel for the crown, or prosecution." (Emphases added and omitted.)).

---

[4]The United States Supreme Court has identified the Commentaries on the Laws of England by William Blackstone "as the most satisfactory exposition of the common law of England." *Schick v. United States*, 195 U.S. 65, 69 (1904).

¶ 46    In 1827, approximately eight years after Illinois was admitted into the Union, the United States Supreme Court described the practice of swearing the jury as follows: "The law presumes, that every juror *sworn in the case* is indifferent and above legal exception : for otherwise he may be challenged for cause." (Emphasis added.) *United States v. Marchant*, 25 U.S. (12 Wheat.) 480, 482 (1827). In *United States v. Powell*, 469 U.S. 57, 66 (1984), the Court again described the practice of swearing jurors: "*Jurors, of course, take an oath to follow the law as charged*, and they are expected to follow it." (Emphasis added.) In 1970, the year Illinois ratified its current constitution, the Court stated in *Maxwell v. Bishop*, 398 U.S. 262, 265 (1970): "it cannot be supposed that once [veniremen] take *their oaths as jurors* they will be unable 'to follow conscientiously the instructions of a trial judge' " (emphasis added) (quoting *Boulden v. Holman*, 394 U.S. 478, 484 (1969)). More recently, in *Martinez v. Illinois*, 572 U.S. 833, 840 (2014) (*per curiam*), the Court expressly held that "[a] jury trial begins, and jeopardy attaches, *when the jury is sworn*." (Emphasis added.)

¶ 47    Scholars and commentators who have studied the common law have, likewise, concluded that a jury oath was a consistent part of the common-law jury trial. See Kathleen M. Knudsen, *The Juror's Sacred Oath: Is There a Constitutional Right to a Properly Sworn Jury?*, 32 Touro L. Rev. 489, 490 (2016) ("Colonial jurisprudence considered it a basic assumption that a jury would be sworn."); Albert W. Alschuler & Andrew G. Deiss, *A Brief History of Criminal Jury in the United States*, 61 U. Chi. L. Rev. 867, 903 n.187 (1994) ("A statute of the Plymouth Colony in 1623 declared that 'all criminal facts . . . should [be tried] by the verdict of twelve Honest men to be Impanelled by Authority in forme of a Jury *upon their oaths*.' [Citation.]" (Emphasis added.)); Jack Pope, *The Jury*, 39 Tex. L. Rev. 426, 437 (1961) ("From the beginning, jurors had to be freemen, had to own property, had to come from the vicinity of the dispute, and *had to give an oath*." (Emphasis added.)); Eric P. Robinson, *Virtual Voir Dire: The Law and Ethics of Investigating Jurors Online*, 36 Am. J. Trial Advoc. 597, 601 (2013) ("[T]he common law assumed that *a juror's oath* was sufficient to ensure fair-mindedness." (Emphasis added.)); Lysander Spooner, *An Essay on the Trial by Jury* 85 (1852) ("The oaths that have been administered to jurors, in England, and which are their legal guide to their duty, all (so far as I have ascertained them) corroborate the idea that the jurors are to try all cases on their intrinsic merits, independently of any laws that they deem unjust or oppressive." (Emphases omitted.)); Douglas G. Smith, *The*

*Historical and Constitutional Contexts of Jury Reform*, 25 Hofstra L. Rev. 377, 428 n.203 (1996) (the common-law jury that was constitutionally preserved consists of jurors " 'who are sworn to try the facts of a case as they are delivered from the evidence placed before them' " (quoting Thomas M. Cooley, *A Treatise on the Constitutional Limitations* 319 (1868)).

¶ 48          Accordingly, we are confident that the practice of swearing jurors with a trial oath was well established in common law long before the ratification of Illinois's first constitution in 1818. In addition, the jury oath continued to be a universal element of all criminal trials at the time Illinois ratified each of its subsequent state constitutions in 1848, 1870, and 1970. This conclusion, however, does not end our analysis with respect to whether the practice of swearing the jury is preserved in our state constitution. As explained above, the phrase "as heretofore enjoyed" in the Illinois Constitution preserves only the "essential" elements of the common-law trial by jury. *Lobb*, 17 Ill. 2d at 299. Therefore, we must determine whether swearing the jury with a trial oath was *essential* to the common-law system of trial by jury. We believe that it was.

¶ 49                    F. Juror Oath Was an Essential Element of the
                            Common-Law Jury Trial

¶ 50          The guarantee of a jury trial offers the criminal defendant little, if any, safeguard if the jurors are not impartial. Impartiality is "a state of mind." *United States v. Wood*, 299 U.S. 123, 145 (1936); *Dennis v. United States*, 339 U.S. 162, 172 (1950). A juror's oath bears directly on the impartiality of the jurors' state of mind.

¶ 51          An oath is " 'any form of attestation by which a person signifies that he or she is bound in conscience to perform an act faithfully and truthfully.' " *Weydert Homes, Inc. v. Kammes*, 395 Ill. App. 3d 512, 518 (2009) (quoting 58 Am. Jur. 2d, *Oath and Affirmation* § 3, at 844 (2009)). Oaths have prominence in early American law. "Indeed, oaths were held in such high regard by the Framers that a bill regarding oaths of office was the first legislation passed by the inaugural Congress and signed by President Washington." Eugene R. Milhizer, *So Help Me Allah: An Historical and Prudential Analysis of Oaths as Applied to the Current Controversy of the Bible and Quran in Oath Practices in America*, 70 Ohio St. L.J. 1, 30-31 (2009).

¶ 52    Swearing jurors with a trial oath directly impacts the state of mind of the selected jurors because the oath is essentially a promise to lay aside one's "impression or opinion and render a verdict based on the evidence presented in court." *People v. Williams*, 40 Ill. 2d 522, 531-32 (1968). It is a "solemn vow to serve the rule of law which governs the social contract of our society." *People v. Abadia*, 328 Ill. App. 3d 669, 676 (2001). The oath, therefore, plays a direct role in securing a defendant's right to an impartial jury.

¶ 53    "Prospective jurors come from many different backgrounds, and have many different attitudes and predispositions." *Lockhart v. McCree*, 476 U.S. 162, 182-84 (1986). However, the constitutional right to an impartial jury

> "presupposes that a jury selected from a fair cross section of the community is impartial, regardless of the mix of individual viewpoints actually represented on the jury, so long as the jurors can conscientiously and properly carry out their *sworn* duty to apply the law to the facts of the particular case." (Emphasis added.) *Id.* at 184.

¶ 54    We are not aware of any scientific measure of the impartiality of the minds of unsworn jurors in comparison to sworn jurors. However, years ago, this court explained the importance of a trial oath in ensuring impartiality in the minds of the jurors as follows: "With some jurors and in some cases, too much solemnity cannot be observed in the conduct of the trial." *Barney*, 22 Ill. at 160. The *Barney* court continued:

> "The solemnity of calling the juror before the [defendant], in the presence of the court, and his there taking the solemn oath prescribed by law, to well and truly try and true deliverance make of that [defendant], not only gives the [defendant] a comfortable assurance that he is to have a fair and impartial trial, but has a salutary tendency to prepare the mind of the juror for the solemn duty he is assuming." *Id.*

This observation remains as true today as it was over 160 years ago. Although the *Barney* court did not expressly hold that the oath was an essential element of the right to an impartial jury preserved by our state's constitution, the *Barney* court's discussion, nonetheless, explicitly highlights the important role the jury oath serves in assembling an impartial jury.

¶ 55    In *Sinopoli*, 316 Ill. at 617-18, this court discussed the essential elements of a jury trial encompassed within the "heretofore" clause of the Illinois Constitution that "cannot be dispensed with or disregarded on the trial of a person charged with a felony." Those elements included 12 jurors appearing before an officer vested with authority to " 'administer oaths to them.' " *Id.* (quoting *Capital Traction Co. v. Hof*, 174 U.S. 1, 13 (1898)).

¶ 56    Over the years, other jurisdictions have also recognized that the practice of swearing the jury is an essential element of a criminal jury trial. In *People v. Pribble*, 249 N.W.2d 363, 366 (Mich. Ct. App. 1976), the court explained:

> "The required oath is not a mere 'formality' which is required only by tradition. The oath represents a solemn promise on the part of each juror to do his duty according to the dictates of the law to see that justice is done. This duty is not just a final duty to render a verdict in accordance with the law, but the duty to act in accordance with the law at all stages of trial. The oath is administered to insure that the jurors pay attention to the evidence, observe the credibility and demeanor of the witnesses[,] and conduct themselves at all times, as befits one holding such an important position."

¶ 57    In *Miller v. State*, 84 So. 161, 162 (Miss. 1920), the Supreme Court of Mississippi emphasized the importance of the jury oath as follows:

> "To say that the jury gave the same careful and conscientious consideration to the evidence when they heard it while not acting under the sanctity of an oath as they would have given had they been bound and obligated by a solemn oath would be to enter the field of speculation, and to so decide would be to say that this court could look into the minds of the jurors and determine with certainty that the effect of a solemn oath upon them would have made no change in the conscientious manner in which they received and considered the evidence offered in the case. It would seem to be more probable, in such a case, that the sanctity of an oath would have its bearing and influence upon the jurors in their consideration of the proof before them."

¶ 58    In *Commonwealth v. Fugmann*, 198 A. 99, 111 (Pa. 1938), the Supreme Court of Pennsylvania determined that the essential elements of a common-law criminal trial included "a jury composed of twelve eligible persons duly summoned, *sworn*,

and impaneled *for the trial of the issue*" and that a departure from the essential elements would be a deprivation of "the right to trial by jury." (Emphases added.) See also *State v. Holm*, 224 P.2d 500, 509 (Wyo. 1950) (citing *Fugmann*, 198 A. at 111); *State v. Godfrey*, 666 P.2d 1080, 1082 (Ariz. 1983) ("[T]he juror's oath is an *essential element* of the constitutional guarantee to a trial by an 'impartial' jury. And if the oath were not given at all we would have no hesitation in finding reversible error even absent any showing of actual prejudice." (Emphasis added.)); *State v. Roberge*, 582 A.2d 142, 144 (Vt. 1990) (same); *Steele v. State*, 446 N.E.2d 353, 354 (Ind. Ct. App. 1983) ("The oath given to a jury prior to the commencement of a trial is not a mere formality. It is intended to impress upon the jury its solemn duty to carefully deliberate on the matter at issue. Most importantly the oath serves as a safeguard of a criminal defendant's fundamental constitutional right to trial by an impartial jury."); *State v. Saybolt*, 461 N.W.2d 729, 737 (Minn. Ct. App. 1990) ("[Juror oaths] are not formalities, are sacred, and no citizen need expose himself to loss of liberty and property by people who are *not sworn* to do their duty." (Emphasis in original.)); *Slaughter v. State*, 28 S.E. 159, 161 (Ga. 1897) (in criminal cases, "a total failure to swear the jury is a matter which cannot, in any manner or under any circumstances, be waived; and, as a consequence, a conviction by an unsworn jury is a mere nullity"); *Howard v. State*, 192 S.W. 770, 772 (Tex. Crim. App. 1917) ("It has not been held, so far as we have been able to discover, that a jury could possibly be a jury until it had been sworn to try the particular case."); *State v. Martin*, 255 N.W.2d 844, 848 (Neb. 1977) ("[I]n criminal cases it is essential to the validity of the proceeding that the jury should be sworn."); *State v. Baldwin*, 12 P. 318, 321 (Kan. 1886) ("It is highly important and necessary that the oath should be administered with due solemnity, in the presence of the [defendant], and before the court, substantially in the manner prescribed by law."); *People v. Pelton*, 7 P.2d 205, 205 (Cal. App. Dep't Super. Ct. 1931) ("[W]hile mere irregularities in the swearing or in the form of oath may be waived by failing to object until after a verdict, an entire failure to swear the jury cannot be waived in any manner or under any circumstances. A conviction by an unsworn jury is a nullity."); *State v. Moore*, 49 S.E. 1015, 1016 (W.Va. 1905) ("It is hardly necessary to cite authorities to show that a person cannot be legally convicted unless the record shows that the jury which tried the case were sworn according to law."); *Dresch v. State*, 14 Tex. App. 175, 178 (1883) ("It has been repeatedly held that the record must show affirmatively that the jury which tried the case were sworn. When

- 18 -

the record omits to show this, the conviction can not stand."); *Dyson v. State*, 722 So. 2d 782, 785 (Ala. Crim. App. 1997) ("The failure to administer the oath to the jury renders the jury's verdict a nullity."); *Alston v. State*, 934 A.2d 949, 962 (Md. Ct. Spec. App. 2007) ("The oath, for centuries, has been viewed as a solemn promise to undertake one of the most serious of legal, civic, and moral responsibilities. Without an oath, a defendant is denied full assurance of a fair and impartial jury."); *State v. Barone*, 986 P.2d 5, 17 (Or. 1999) ("The jury oath is designed to vindicate a defendant's fundamental constitutional rights to a fair trial before an impartial jury."), *cert. denied*, 528 U.S. 1086 (2000); *State v. Shaw*, 636 S.W.2d 667, 671 (Mo. 1982) (*en banc*) ("The jury does not exist until the veniremen selected therefor are sworn to service in that capacity."); *State v. Davis*, 52 Vt. 376, 381 (1880) ("[The criminal oath to be administered to a jury] is not only a summary of the duties of the jurors, but is also the only security which the State and the respondent have for a faithful, fearless discharge of those duties. It has been so regarded for many centuries."); *Chiles v. State*, 45 Ark. 143, 146 (1885) ("The record should show that the jurors were thus sworn, and this record fails to do so. *** For this there must be a reversal."); *Zapf v. State*, 17 So. 225, 225 (Fla. 1895) ([T]he court awarded a new trial because "[t]he record [was] fatally defective in not showing that the jury were sworn. *** The fact of the jury being sworn should appear of record.").[5]

¶ 59        Under federal law, the United States Supreme Court has also suggested that swearing the jury is an essential element in securing an impartial jury. In *Lockhart*, 476 U.S. at 184, the Court stated that "the Constitution presupposes that a jury selected from a fair cross section of the community is impartial *** so long as the jurors can conscientiously and properly carry out their *sworn duty* to apply the law to the facts of the particular case." (Emphasis added.) In *Patton v. Yount*, 467 U.S. 1025, 1036 (1984), the Court addressed a criminal defendant's argument that a juror was erroneously seated over his challenges for cause. The Court stated that, in addressing a defendant's challenge to an individual juror's partiality, the key question was "did a juror *swear* that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed." (Emphasis added.) *Id.* In *Pena-Rodriguez v.*

---

[5]We cite these decisions from other jurisdictions only to highlight the extent that other courts have recognized the essential role that the jury oath serves in the criminal jury trial process.

*Colorado*, 580 U.S. ___, ___, 137 S. Ct. 855, 868 (2017), the Court recently emphasized that "[j]urors are presumed to follow *their oath*." (Emphasis added.) Likewise, in *Wainwright v. Witt*, 469 U.S. 412, 424 (1985), the Court held that "[t]he proper standard for determining when a prospective juror may be excluded for cause" "is whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his *oath*.' " (Emphasis added.) (quoting *Adams v. Texas*, 448 U.S. 38, 45 (1980)). In *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 564 (1976), the Court discussed the option of sequestering a jury in cases involving pretrial publicity as follows: "Although that measure insulates jurors only after they are *sworn*, it also enhances the likelihood of dissipating the impact of pretrial publicity and *emphasizes the elements of the jurors' oaths.*" (Emphases added.). In *United States v. Olano*, 507 U.S. 725, 740 (1993), the Court stated that jurors "commence[ ] their office *with an oath*." (Emphasis added). In these cases, the Supreme Court has not expressly stated that the jury oath is an essential element of a trial by an impartial jury, but the language strongly suggests that the Court believes that it is essential.

¶ 60     Therefore, based on our review of Illinois caselaw, federal caselaw, and caselaw from our sister states, we are confident that American courts have long viewed the jury oath as serving an essential role in assembling an impartial jury. Importantly, in interpreting the "as heretofore enjoyed" language in article I, section 13, of the Illinois Constitution, given the broadly recognized importance of the jury oath in the criminal jury trial process, we are equally confident that the drafters of the Illinois Constitution intended that the common-law practice of swearing the jury be retained and secured for criminal defendants in Illinois. Therefore, the practice of swearing jurors with a trial oath is guaranteed by the "heretofore enjoyed" clause in our state's constitution. See, *e.g.*, *Kakos*, 2016 IL 120377, ¶ 28 ("Because the size of the jury—12 people—was an essential element of the right of trial by jury enjoyed at the time the 1970 Constitution was drafted, we conclude jury size is an element of the right that has been preserved and protected in the constitution."). This does not end our analysis because we must next determine, under the second prong of the plain error rule, whether deprivation of this constitutional right amounts to structural error. We believe that it does.

## G. Failure to Swear Jurors With a<br>Trial Oath Constitutes Structural Error

¶ 62　　　When we consider the essential purpose of the jury oath along with its long and storied history, it does not require much additional analysis to reach the conclusion that failure to administer a trial oath to the jury at any time prior to the jury rendering its verdict constitutes structural error.[6] This error affects the framework within which the trial proceeds, rather than being merely an error in the trial process itself. The jury oath is more than a mere formality. The defendant is entitled to

> "a jury composed of persons *who have sworn on their oaths* that they can lay aside anything that they might have learned about the case from whatever source together with any opinions they may have formed and judge the case solely on the facts produced in open court and on the law given them by the trial judge." (Emphasis added.) *People v. Farris*, 82 Ill. App. 3d 147, 152 (1980) (citing *Williams*, 40 Ill. 2d 522).

¶ 63　　　The purpose of an oath is to impress upon the swearing juror an appropriate sense of obligation in carrying out his or her duties as a juror. By solemnly swearing to deliver a true verdict according to the law and evidence, the juror takes an oath of office that "implicitly invites punishment" should the promise be broken. Black's Law Dictionary 1099 (7th ed. 1999). The jury oath, therefore, preserves the integrity of the jury trial process by impressing upon the jurors their sacred duty to render a true verdict in accordance with the law and evidence, thereby ensuring the defendant's right to an impartial jury is honored by the persons being sworn.

¶ 64　　　Accordingly, the complete failure to swear the jury with a trial oath is an error of such gravity that it threatens the integrity of the judicial process. Depriving a defendant of a sworn jury deprives that defendant of a basic protection afforded at common law that is specifically designed to ensure that the jury is impartial. Moreover, it is a protection guaranteed in our state constitution. Therefore, a criminal trial in front of an unsworn jury cannot reliably serve as a method for

---

[6]We offer no opinion on whether a criminal defendant is denied his or her constitutional right to an impartial jury when there is some *delay* in swearing a jury with a trial oath. Our analysis addresses only the complete failure to swear the jury with a trial oath prior to the jury rendering its verdict.

determining guilt or innocence, and the unsworn status of the jury in this case constitutes second prong plain error.

¶ 65 Another factor contributing to our conclusion that the error is structural is the difficulty of measuring the impartiality of unsworn jurors. For example, in *United States v. Gonzalez-Lopez*, 548 U.S. 140, 148-49 (2006), the Court had to determine whether the denial of a defendant's right to counsel of his choice constituted structural error. In concluding that it was structural error and not subject to harmless-error analysis, the Court noted, in part, as follows:

"It is impossible to know what different choices the rejected counsel would have made, and then to quantify the impact of those different choices on the outcome of the proceeding. *** Harmless-error analysis in such a context would be a speculative inquiry into what might have occurred in an alternative universe." *Id.* at 150.

See also *Vasquez v. Hillery*, 474 U.S. 254, 263 (1986) ("[W]hen a petit jury has been selected upon improper criteria or has been exposed to prejudicial publicity, we have required reversal of the conviction because the effect of the violation cannot be ascertained.").

¶ 66 Likewise, as we have explained, swearing the jury is part of the very framework within which the trial proceeds, but the effect of a complete failure to administer a jury oath is difficult, if not impossible, to measure because the error concerns the subjective frame of mind of the individual jurors. Therefore, like the Supreme Court in *Gonzalez-Lopez*, "we rest our conclusion of structural error[, at least in part,] upon the difficulty of assessing the effect of the error." *Gonzalez-Lopez*, 548 U.S. at 149 n.4; see also *Waller v. Georgia*, 467 U.S. 39, 49, n.9 (1984) (violation of the public-trial guarantee is not subject to harmless review because "the benefits of a public trial are frequently intangible, difficult to prove, or a matter of chance"). This court has adhered to the principles set out in *Gonzalez-Lopez* in evaluating structural error as a matter of state law. See *People v. Stoecker*, 2020 IL 124807, ¶ 24 (discussing *Gonzalez-Lopez*).

¶ 67 In addition to the above analysis, we believe that the double jeopardy clauses of the federal and state constitutions also support our conclusion that a complete failure to administer a jury oath in a criminal jury trial is structural error. Under the

double jeopardy clauses of the respective constitutions, a defendant cannot be put in jeopardy twice for the same offense. U.S. Const., amend. V; Ill. Const. 1970, art. I, § 10. In addition, both this court and the Supreme Court have plainly established that, under both constitutions, jeopardy does not attach until the jury is selected and sworn. *Serfass v. United States*, 420 U.S. 377, 387 (1975) ("In the case of a jury trial, jeopardy attaches when a jury is empaneled *and sworn*." (Emphasis added.)); *People v. Bellmyer*, 199 Ill. 2d 529, 538 (2002) ("In Illinois, jeopardy attaches in a jury trial when the jury is empaneled *and sworn*." (Emphasis added.)). In fact, the Supreme Court has noted that "[t]here are few if any rules of criminal procedure clearer than the rule that 'jeopardy attaches when the jury is empaneled *and sworn*.' " (Emphasis added.) *Martinez*, 572 U.S. at 839 (quoting *Crist v. Bretz*, 437 U.S. 28, 35 (1978)).

¶ 68       Because jeopardy does not attach until the jury is sworn, in the event that an unsworn jury returns a verdict of acquittal, the State may retry the defendant for the same offense because jeopardy never attached. See *Spencer v. State*, 640 S.E.2d 267, 268 (Ga. 2007) (holding that a not guilty verdict by an unsworn jury did not bar retrial in the same charge because the jury was without authority to render a verdict and double jeopardy never attached); *United States v. Wedalowski*, 572 F.2d 69, 75 (2d Cir. 1978) ("It thus seems clear that in the case at bar, the jury never having been sworn to try this indictment, jeopardy never attached, [and] retrial of defendant is not prohibited by the Sixth Amendment ***.").

¶ 69       In *Crist*, the Court held that the rule " 'that jeopardy attaches in jury trials when the jury *is sworn*' " is an "integral part of the constitutional guarantee" against double jeopardy. (Emphasis added.) *Crist*, 437 U.S. at 32-36. Establishing the jury swearing as the moment when jeopardy attaches was not "an arbitrary exercise of linedrawing" but instead is "a settled part of federal constitutional law" that "protects the defendant's interest in retaining a chosen jury." *Id.* at 37-38. Therefore, swearing the jury serves as the " 'lynchpin' " moment for all double jeopardy jurisprudence. *Id.* at 38 (quoting *Bretz v. Crist*, 546 F.2d 1336, 1343 (9th Cir. 1976)). "A jury trial begins, and jeopardy attaches, when the jury is sworn." *Martinez*, 572 U.S. at 840; see also *United States v. Green*, 556 F.2d 71, 72 (D.C. Cir. 1977) (*per curiam*) ("[U]ntil a jury has been sworn to try the case *** a defendant is subject to no jeopardy, for the twelve individuals in the box have no power to convict him.").

¶ 70    It seems self-evident that a procedural step that is the crucial moment in every criminal proceeding that places a criminal defendant in jeopardy is, by necessity, an essential element of all criminal jury trial proceedings. An error that prevents jeopardy from attaching affects the very framework within which the trial proceeds and cannot be logically categorized as a mere trial error. Therefore, in the present case, that jeopardy never attached to the defendant further supports our conclusion that the error is structural and requires automatic reversal.

¶ 71    In addition to double jeopardy concerns, we also note that "[i]t has long been recognized that once a juror has been accepted *and sworn*, neither party has the right to peremptorily challenge that juror." (Emphasis added.) *People v. Peeples*, 205 Ill. 2d 480, 520 (2002). The swearing of the jury, therefore, is a defining moment that substantially impacts many crucial facets of the criminal jury trial process.

¶ 72    The appellate court in this case held that the failure to swear the jury was not second prong plain error under the facts of this case because the questions and admonishments of the circuit court during *voir dire*, along with the circuit court's other instructions and admonishments, sufficiently addressed the purposes of a jury oath. 2020 IL App (1st) 170675, ¶ 46. However, the appellate court's second prong plain error analysis is flawed in two important aspects. First, the appellate court failed to consider the express language of our state constitution, which preserves the essential elements of the common-law right to a trial by jury, and as we explained above, a trial oath administered to the jury is one of those essential elements. The appellate majority's analysis, therefore, does not properly account for the protections afforded by our state's constitution.

¶ 73    Second, the appellate court's second prong plain error analysis in this case is, in substance, a fact-specific inquiry into whether the structural error prejudiced the defendant. The appellate court looked at other aspects of the trial and concluded that failure to swear the jury did not affect the outcome of the trial. *Id.* This is not proper analysis under the second prong of Illinois's plain error rule.

¶ 74    As we have explained, under Illinois's well-established plain error standard, we have equated second prong plain error with structural error. Structural error, in turn, requires a reversal regardless of the effect of the error on the outcome of the trial. Therefore, under the second prong of Illinois's plain error rule, the court must

determine whether structural error occurred, and once structural error is found, automatic reversal is required. *Herron*, 215 Ill. 2d at 186-87. Additional analysis of other aspects of the trial to determine whether the defendant was prejudiced by the structural error is not appropriate analysis under the second prong of the plain error rule. Errors that fall within the purview of the second prong of the plain error rule are "presumptively prejudicial errors—errors that may not have affected the outcome, but must still be remedied" because the error "deprive[d] the defendant of a fair trial." *Id.* at 185.

¶ 75    The appellate court's error stems from its reliance on the majority's analysis in *People v. Cain*, 869 N.W.2d 829 (Mich. 2015), which concluded that failure to swear the jury was not structural error. The appellate court's reliance on *Cain* is misplaced. In addition to the obvious distinction that *Cain* does not analyze the right to a jury trial as preserved by the "as heretofore enjoyed" clause in our state's constitution, the *Cain* court also applied a plain error standard that contradicts Illinois's second prong plain error analysis.

¶ 76    Under the plain error standards applied in *Cain*, structural errors do not necessarily constitute plain error or an automatic reversal. See *id.* at 833-34. Instead, the majority in *Cain* held that the court need not decide whether the error constituted structural error "because it is undisputed that since this is an unpreserved error, defendant must satisfy the [four-part] plain-error standard of [*People v. Carines*, 597 N.W.2d 130 (Mich. 1999)]." *Id.* at 834 n.4. The *Cain* court, therefore, did not analyze whether failure to swear the jury was structural error but instead engaged in a fact-specific, case-specific inquiry to determine whether the failure to swear the jury impacted the outcome of the trial regardless of whether the error was structural error. *Id.* at 835.

¶ 77    Our second prong plain error standard is not the same. In fact, this court has previously rejected a request to adopt a four-part plain error test similar to that utilized by the *Cain* court. *Herron*, 215 Ill. 2d at 170. Although we found that Illinois's two-prong test was similar to this four-part test, we also observed that there are differences that have arisen between the two tests as a result of "a function of the common law process." *Id.* at 186.

¶ 78    In the present case, unlike the plain error analysis set out in *Cain*, under Illinois's second prong plain error standard, we must analyze whether failure to

swear the jury was structural error, and if so, reversal is automatic without a fact-specific inquiry to determine whether the unpreserved structural error impacted the outcome of the trial. See also *People v. Baez*, 241 Ill. 2d 44, 105 (2011) (finding violations of the right to counsel of choice to be "structural errors not subject to harmless-error review, and they therefore do not depend on a demonstration of prejudice by defendant").

¶ 79    As the dissent in *Cain* correctly observed, "[a]s a matter of transitive logic, the fact that the defendant has proved that a particular error is structural should also be sufficient to make the presumptive case that the fairness, integrity, or public reputation of the proceedings has been seriously affected." *Cain*, 869 N.W.2d at 851 (Viviano, J., dissenting, joined by McCormack, J.). In Illinois, we have explicitly linked structural error to second prong plain error, requiring reversal without a showing of prejudice. *Herron*, 215 Ill. 2d at 185. Therefore, only the dissent in *Cain* is instructive in evaluating plain error under Illinois law; the *Cain* majority's analysis is not.

¶ 80    Likewise, for these same reasons, the State's reliance on *United States v. Turrietta*, 696 F.3d 972 (10th Cir. 2012), is misplaced. See *id.* at 976 n.9 (applying a similar four-part plain error test, the court held that the gravity of the asserted error "has little bearing on the application of the plain error test" and that "[w]hether an error can be properly characterized as 'structural' has nothing to do with plain error review"). *Turrietta*'s plain error analysis is not instructive in applying Illinois's second prong plain error standard.

¶ 81    In arguing against automatic reversal, the State contends that defendants should not be rewarded for silently watching a curable error and holding the objection until after the jury returns its verdict. We do not share the State's concern about this type of gamesmanship arising from an automatic reversal in this case. Obviously, in any criminal jury trial, the primary objective of the defendant and his attorney in going to trial is securing an acquittal. A trial before an unsworn jury cannot result in an acquittal because the defendant has yet to be placed in jeopardy before the jury is sworn. After an acquittal by an unsworn jury, the prohibition against double jeopardy would not bar the State from retrying the defendant on the same charges because jeopardy never attached. Therefore, no competent defense attorney would consider knowingly trying a case before an unsworn jury to be a viable strategy

option. Gamesmanship by the defense bar is not likely to occur over the unsworn status of the jury when doing so would defeat any acquittal secured by a trial before the unsworn jury.

¶ 82   We also note that the appellate court in the present case placed some significance on the fact that the circuit court administered the *voir dire* oath to the jury. Specifically, the appellate court stated, "we need not resolve the effect under Illinois law of a forfeited claim of a trial by an unsworn jury because the jury here was not completely unsworn." 2020 IL App (1st) 170675, ¶ 43. We disagree with this conclusion.

¶ 83   When the clerk swore the already-selected jurors with the *voir dire* oath, the jurors solemnly swore only to truthfully answer any questions asked about their qualifications for being jurors. At that point in the proceeding, however, the jurors had completed answering all questions about their qualifications; no one asked them any further questions about their qualifications after the oath. There is a profound distinction between the *voir dire* oath and an oath to fairly try the case. See *Miller*, 84 So. at 161-62 ("The preliminary oath administered to the jurors, before the voir dire examination, for the purpose of ascertaining their qualifications as jurors, was certainly not an oath to try the issue joined between the state and the accused."). Here, the *voir dire* oath given to the jury made no mention of the jurors' solemn obligation to fairly try the issues in the case in accordance with the law and evidence and render a true verdict. Therefore, contrary to the appellate court's conclusion, this case does, in fact, present us with a forfeited challenge to a conviction handed down by a jury that was never sworn to try the case; it was an unsworn jury.

¶ 84                              H. Required Content of Juror's Trial Oath in
                                              Criminal Jury Trials

¶ 85   Both the Code of Criminal Procedure of 1963 (Code) and the rules of this court reference the practice of swearing the jury in criminal trials. See 725 ILCS 5/115-4(g) (West 2018) ("After the jury is impaneled and sworn the court may direct the selection of 2 alternative jurors who shall take the same oath as the regular jurors."); Ill. S. Ct. R. 434(e) (eff. Feb. 6, 2013) (same). In addition, section 20 of the Jury Act also references the practice of swearing the jury. 705 ILCS 305/20(a) (West

- 27 -

2018) ("It shall be the duty of the clerk of the court *** to write the name of each petit juror summoned and retained for that week on a separate ticket, and put the whole into a box or other place for safekeeping; and as often as it shall be necessary to impanel a jury, the clerk, sheriff or coroner shall, in the presence of the court, draw by chance 12 names (or 14 where alternate jurors are required) out of such box or other place, which shall designate the persons to be *sworn* on the jury." (Emphasis added.)). However, there is no Illinois statute or rule that sets out a specific form or content for a trial oath to be given to jurors in a criminal trial.[7]

¶ 86      The constitutionally required jury oath is a matter of substance, not form. It has been stated that the jury oath "at common law in criminal cases was: 'You shall well and truly try, and true deliverance make between our Sovereign Lord the King and the prisoner at the bar, whom you shall have in charge, and a true verdict give according to the evidence. So help you God.' " 50A C.J.S. *Juries* § 524 (Feb. 2022 Update). In other jurisdictions, the exact language varies, but the elements of a jury oath that are common across the jurisdictions include solemnity, a decision based on the law and evidence, and a fair or true verdict. Knudsen, *supra*, at 495.

¶ 87      Likewise, we conclude that the essential elements of the juror's trial oath that is preserved in our state's constitution include solemnity, a decision based on the law and evidence, and a fair or true verdict. These elements are consistent with the common-law jury oath. See *Sparf v. United States*, 156 U.S. 51, 170, 173 (1895) (Gray, J., dissenting, joined by Shiras, J.) ("before and since the adoption of the constitution," selected jurors have been required to swear an oath that they will "well and truly try and true deliverance make between the government and the prisoner at the bar, according to their evidence"); *Beale v. Commonwealth*, 25 Pa. 11, 17 (1855) (articulating the common-law form of a juror's oath in criminal cases).

---

[7]Section 112-2 of the Code sets out an oath to be administered to grand juries (725 ILCS 5/112-2 (West 2018)), section 3-3034 of the Counties Code sets out the oath to be given to a coroner's jury (55 ILCS 5/3-3024 (West 2018)), section 10-5-40 of the Eminent Domain Act (735 ILCS 30/10-5-40 (West 2018)) sets out the oath to be given to jurors in an eminent domain case, and section 5-9 of the Illinois Drainage Code (70 ILCS 605/5-9 (West 2018)) sets out the oath to be given to jurors in drainage proceedings. However, there is no similar statutory provision or rule establishing the specific trial oath to be given to selected jurors in a criminal jury trial.

¶ 88     The formality of a trial oath that includes these elements will ensure that the members of the jury have committed to a solemn duty to lay aside their impressions or opinions, carefully deliberate on the matter at issue, and render a verdict based on the law and evidence in court, thus preserving the defendant's constitutional right to an impartial jury. Accordingly, to pass constitutional muster under our state's constitution, a jury must be sworn with an oath that substantially incorporates these elements.

¶ 89     "A criminal defendant, whether guilty or innocent, is entitled to a fair, orderly, and impartial trial *** conducted according to law." *People v. Bull*, 185 Ill. 2d 179, 214 (1998). In a criminal jury trial, the jurors are empowered to declare the defendant guilty of a crime and subject to punishment by our government, including loss of liberty. The need for impartiality in the individuals serving in this capacity cannot be overstated.

¶ 90     We recognize that there are several pretrial and trial procedures in place that further the goal of protecting a defendant's right to an impartial jury. See *Groppi v. Wisconsin*, 400 U.S. 505, 509-10 (1971). The jury trial oath, however, plays an essential role in ensuring impartiality in the minds of individuals once they have been selected to serve as jurors. In addition, the jury oath has been an essential element of the criminal jury trial process long before Illinois ratified its first state constitution. The language of our state constitution preserves the practice of swearing the jury for every criminal defendant facing criminal prosecution in this state. Accordingly, a trial before an unsworn jury deprives a criminal defendant of the right to a jury trial as guaranteed by our state's constitution.

¶ 91     In addition, given the significance of the jury oath to ensuring juror impartiality, we cannot say that a conviction before an unsworn jury was secured by a fundamentally fair process. Instead, upholding a conviction before an unsworn jury would undermine the integrity of the very foundation of our system of criminal justice, that foundation being the fundamental right to trial by an impartial jury. This error, in and of itself, casts doubt upon the reliability of the judicial process.

¶ 92                        III. CONCLUSION

¶ 93        For the foregoing reasons, under the second prong of the plain error rule, we exercise our discretion to address this forfeited error, reverse the defendant's conviction and sentence, and remand to the circuit court for a new trial. Because jeopardy never attached, the State is not precluded on double jeopardy grounds from retrying the defendant on remand.


¶ 94        Reversed and remanded.