NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 221027-U

NO. 4-22-1027

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 15, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| JARVIS POSTLEWAITE, | ) | No. 22CF17 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Presiding Justice DeArmond and Justice Turner concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, holding that (1) the record was insufficient to determine whether the State's failure to turn over an allegedly withheld laboratory report violated *Brady v. Maryland*, 373 U.S. 83 (1963) and (2) defendant's claim that the State failed to lay a proper foundation for the admission of a handgun into evidence was forfeited, and the first prong of the plain error doctrine was not applicable.

¶ 2    Defendant, Jarvis Postlewaite, appeals his conviction for armed robbery. Defendant argues the State's failure to disclose a laboratory report concerning the test results of latent print cards violated his right to due process pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). Defendant also argues that the trial court erred by admitting a handgun into evidence because the State failed to lay an adequate foundation for its admission. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4          Defendant was charged with armed robbery (720 ILCS 5/18-2(a)(2) (West 2022)), being an armed habitual criminal (*id.* § 24-1.7), and unlawful possession of a weapon by a felon (*id.* § 24-1.1(a)). The charges stemmed from an incident during which defendant allegedly robbed a gas station while carrying a firearm. Counsel was initially appointed to represent defendant, but defendant indicated prior to trial that he wished to proceed *pro se*. After admonishing defendant, the trial court permitted him to represent himself.

¶ 5          Defendant filed a motion to produce documents seeking, among other things, laboratory results from latent print cards taken at the gas station. Defendant later filed an amended motion to compel discovery, which also requested these laboratory results. At a hearing on the amended motion to compel, the State indicated it had turned over everything it had to defendant, and there were no laboratory results on the materials for which he was requesting reports. The trial court denied the amended motion to compel.

¶ 6          At the jury trial, Amit Patel testified that that he was working as a cashier at a gas station on the day of the incident, January 19, 2022. Patel stated he was robbed at gunpoint that afternoon by an individual he identified in court as defendant. During the incident, defendant walked up to the cash register, pulled out a gun, and told Patel not to move. Defendant directed Patel to place the money from the cash register and the safe into a black bag, and Patel complied. Defendant grabbed some cigarettes and put them in the black bag as well. Defendant told Patel to get on the floor and not to move. Defendant then left. Patel did not know whether he left on foot or in a car.

¶ 7          After defendant fled, Patel called 911. At that time, he described the robber as "a black man with a black jacket, black pants and then a gray-colored winter cap," who was carrying a gun. Patel testified that the robber's face was partially covered by a blue medical

mask. Patel indicated he was able to identify defendant as the robber based on defendant's height, race, and body language. He was also able to identify defendant by his voice, though he acknowledged that, before the trial, he had only heard defendant's voice during the robbery. Patel stated he had not seen defendant before the day of the robbery.

¶ 8         Patel testified that the gas station had video equipment that recorded the incident. He had viewed the recording, and it fairly and accurately depicted the incident. The video recording was admitted into evidence. It showed a car that appeared to be beige or silver drive around the gas station prior to the robbery. A black man wearing black pants, a black shirt, a black jacket, a gray hat, and a blue medical mask entered the gas station. The man opened a refrigerator, removed a bottle, and walked up to the cash register. He removed a handgun from his jacket. The handgun was black on the bottom and silver with ridges on the top. The man then walked behind the counter while still holding the handgun. The cashier placed money into a black plastic bag, and the robber placed a few boxes of cigarettes that were located behind the counter into the bag as well. The man left the store carrying the black bag.

¶ 9         Several still images taken from the security camera footage were also admitted into evidence. These included several images of the robber holding the handgun. There was also one image of the beige or silver car on the street adjacent to the gas station.

¶ 10        Officer Sam Fitzpatrick of the Livingston County Sheriff's Office testified that he received a call on the day of the incident concerning an armed robbery that had just occurred at the gas station. Fitzpatrick then drove to the gas station. On the way, he passed a tan or gold-colored Honda Accord with front-end damage. Fitzpatrick testified he received an alert later that day to "be on the lookout" for a tan Honda Accord with front-end damage being driven by a black male. Fitzpatrick identified the still image of the car from the security camera footage as

the Honda Accord he had seen on the day of the robbery. The State presented a photograph of a vehicle that appeared to have crashed near a house, and Fitzpatrick testified it also appeared to be the Honda Accord he saw on the day of the incident.

¶ 11 Officer Daron Bagnell of the Pontiac Police Department testified that he assisted in investigating the robbery at the gas station. He stated officers became aware of a suspect vehicle. He ran the license plate number on the vehicle and learned that it was a beige Honda registered to a woman in Aurora and was listed as "taken and not returned or loaned and not returned." Bagnell called the Aurora Police Department and learned defendant was a person of interest in the matter involving the car. Bagnell then sent out the information he had received to assist officers in other jurisdictions.

¶ 12 Sergeant Glenn Peters of the Dwight Police Department testified that, on the day of the incident, he had received a notification to be on the lookout for a Honda Accord, and he was given the license plate number of the vehicle. Peters encountered the vehicle in or near Dwight, Illinois. He observed the driver briefly and saw that he was a black male. Peters pursued the vehicle, which was going eastbound on Route 17. The vehicle travelled over 100 miles per hour at times. It went into the ditch at one point and then continued on Route 17. Peters eventually lost track of the vehicle and subsequently learned from the Kankakee City Police Department that it had crashed.

¶ 13 Deputy Keith Semmerling of the Livingston County Sheriff's Office testified that he responded to the scene of a vehicle crash on the day of the incident. Prior to the crash, the subject vehicle had been pursued by a different law enforcement agency. Photographs from the scene of the crash were admitted into evidence, including a photograph of a handgun that was recovered at the scene and a photograph of the car after the crash. Fitzpatrick had previously

- 4 -

testified the latter photograph appeared to show the same vehicle he saw shortly after the robbery. Semmerling identified People's exhibit No. 21 as the black and silver handgun that was recovered from the scene of the crash. He indicated the gun was transferred to the Pontiac Police Department.

¶ 14        Officer Clayton Cahoe of the Kankakee City Police Department testified he responded to the scene of the vehicle crash. After the crash, defendant fled on foot, and Cahoe and another officer apprehended him shortly thereafter. Defendant was lying face down when he was apprehended, and Cahoe located a firearm under his chest. Cahoe identified People's exhibit No. 21 as the firearm he recovered. Cahoe testified the photograph of the handgun admitted during Semmerling's testimony depicted the firearm in the area it was recovered.

¶ 15        Detective Michael Henson of the Pontiac Police Department testified that he investigated the armed robbery. Henson viewed video footage taken from the gas station and saw that the robber was wearing black clothing and a gray hat. Henson testified that defendant was involved in a vehicle crash after the robbery and was taken to the hospital. Another officer brought clothes that had been cut from defendant's body at the hospital to Henson's office, and Henson observed the clothing in his office the day after the incident. The clothing included a gray hat, which appeared to be the same type of hat that the individual in the video was wearing during the robbery. It also included a black shirt, a black jacket, and black sweatpants. Henson put the clothing in a bag, sealed it, and stored it in the evidence room. The clothing was admitted into evidence over defendant's objection. Photographs of the clothing and $532 in cash, which Henson indicated was recovered from defendant's person, were also admitted into evidence.

¶ 16        Henson identified People's exhibit No. 21 as a handgun that another officer, Sergeant Andrew Rork, brought to the Pontiac Police Department. Henson stated he believed the

handgun was originally recovered by the Kankakee City Police Department, transferred to Rork, and then transferred to the Pontiac Police Department. When Henson received the handgun, he "packaged" it and placed it in a box. The State moved to admit the handgun into evidence. Defendant objected, and the trial court asked for the basis of his objection. The following exchange occurred:

> "THE DEFENDANT: My objection is speculation due to the fact that nothing has been presented to show that I possessed the gun.
>
> THE COURT: Well, that's argument, that's not speculation as to the gun coming in.
>
> THE DEFENDANT: He's pointing me out saying that I am him, I am the guy; and he's not putting no factual evidence or no foundation to support that.
>
> THE COURT: All right. Overruled. People's Exhibit 21 is admitted."

¶ 17    Henson then testified that he had examined the handgun, and it was fully operational. The prosecutor asked, "Distinctive markings on it, would you agree?" Henson replied, "Yeah. That silver on the top and the black on the bottom." Henson later testified that, although Rork brought the handgun to the Pontiac Police Department, he may not have been the officer who placed it in Henson's office. Henson indicated he observed the handgun in his office when he came to work the next day, but he was not present when it was initially brought to his office. Defendant asked, "So, you don't know how they got in your office?" Henson replied, "Correct." Henson stated that his office was often unlocked, though officers usually locked it after placing evidence inside. When the office was unlocked, any police officer could access it.

¶ 18    Henson testified that, while he was investigating the robbery, he and another detective processed the scene, including the store counter and the cigarette containers behind the

counter, for latent prints. Henson believed six latent print cards were taken from the scene, which included possible latent prints, a partial fingertip, and palm prints. Defendant asked Henson why he did not "run" the prints. Henson stated that the prints were taken to a laboratory for testing, and the laboratory sent back a report concerning the results of the latent print testing. Defendant asked Henson what the results were. Henson replied: "Some of them were not enough to be comparable. One of them was—I would have to review the actual lab report to tell you exactly what came back on the print."

¶ 19        At the State's request, the trial court admitted certified copies of defendant's prior convictions for armed robbery and unlawful manufacture of a look-alike substance.

¶ 20        The jury found defendant guilty of all three charged offenses. While the jury was deliberating, the trial court asked the State whether it had tendered to defendant the laboratory reports discussed during Henson's testimony. The prosecutor indicated he had not tendered a latent fingerprints report because he did not know if such a report existed.

¶ 21        Defendant filed a motion for a new trial and an amended motion for a new trial. In the amended motion, defendant asserted the trial court erred by admitting the handgun and the clothes into evidence when there was an incomplete chain of custody. Defendant also argued the State's failure to turn over the documents requested in his motion to compel, which included the laboratory report on the latent print cards, violated *Brady*, as the trial testimony showed this evidence existed. The court denied the amended motion.

¶ 22        Following a sentencing hearing, the trial court sentenced defendant as a habitual criminal to natural life imprisonment for the offense of armed robbery. The court found the remaining counts merged. This appeal followed.

¶ 23                                II. ANALYSIS

¶ 24    On appeal, defendant argues the State's failure to disclose the laboratory report concerning the latent print cards violated *Brady*, and, accordingly, he is entitled to a new trial. Defendant also argues the trial court abused its discretion by admitting the handgun into evidence because the State failed to lay a proper foundation for its admission.

¶ 25                              A. Alleged *Brady* Violation

¶ 26    Defendant contends that the State's failure to turn over the laboratory report concerning the latent print cards violated his right to due process under *Brady*. Defendant asserts Henson indicated during his testimony that a result came back on at least one of the prints following laboratory testing. Defendant also notes that Henson did not say the results of the testing showed this print belonged to defendant. On this basis, defendant contends the laboratory report on the latent print cards was favorable and material evidence pursuant to *Brady* because it could have been used to present an alternative suspect in the armed robbery. Defendant also argues the report constituted impeachment evidence in that it presented a state of facts that could differ from Patel's testimony identifying him as the robber.

¶ 27    In *Brady*, the United States Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* The *Brady* rule applies to evidence that is known to the police but not to the prosecutor. *People v. Beaman*, 229 Ill. 2d 56, 73 (2008).

> "A *Brady* claim requires a showing that: (1) the undisclosed evidence is
> favorable to the accused because it is either exculpatory or impeaching; (2) the
> evidence was suppressed by the State either wilfully or inadvertently; and (3) the

accused was prejudiced because the evidence is material to guilt or punishment."

*Id.* at 73-74.

Once a reviewing court has found that a *Brady* violation occurred, the error cannot be found harmless. *Id.* at 74.

¶ 28        Citing *People v. Downin*, 357 Ill. App. 3d 193, 199 (2005), defendant argues that the *de novo* standard of review applies in the instant case because his *Brady* claim presents a constitutional issue. However, the State, citing *Beaman*, 229 Ill. 2d at 75, contends the manifest error standard of review applies. We need not determine which standard is correct, as defendant's argument would fail under either standard.

¶ 29        Defendant has failed to show the allegedly undisclosed evidence was favorable to him in that it was either exculpatory or impeaching. The record does not contain a report from the crime laboratory concerning the latent print cards. Assuming that Henson's testimony that such a report existed is correct, the record is not sufficient to determine whether the report would have been favorable to defendant. Henson testified that the laboratory results showed that some of the prints were unsuitable for comparison. He then stated: "One of them was—I would have to review the actual lab report to tell you exactly what came back on the print." It is unclear from this comment whether Henson was stating that an identifiable result came back for one of the prints and he could not recall what it was (as defendant claims) or if he generally could not recall the results of the report.

¶ 30        Even if we were to interpret Henson's comment as indicating that a result came back on one of the prints, the record contains no information as to whom this print belonged. Without more information, we cannot determine whether the undisclosed laboratory report would have supported a theory that a third party robbed the gas station, as defendant claims. For

example, it is possible that the report could have shown the identifiable print was consistent with being defendant's fingerprint or Patel's fingerprint. Under either of these possible scenarios, the results would not have supported a theory that a third party robbed the gas station. While defendant notes that Henson did not testify that the laboratory report showed the print belonged to defendant, he also did not testify that it showed the print did not belong to defendant. Accordingly, it would be speculative to infer that the print belonged to someone else. We conclude defendant has not shown that the State's failure to turn over the laboratory report concerning the latent print cards, assuming that such a report exists, constituted a *Brady* violation.

¶ 31                                   B. Admission of the Handgun

¶ 32           Defendant argues the trial court abused its discretion by admitting the handgun into evidence because the State failed to establish a proper foundation for its admission. Defendant contends the State failed to establish a proper chain of custody, as Henson testified that he was not present when the handgun was placed in his office, did not know how the handgun got into his office, and only knew that it was there the next day when he came to work. Defendant also argues the handgun did not have sufficiently unique characteristics in order for a foundation to be established through identification testimony. Defendant contends that, even if we were to find identification testimony was an appropriate method for establishing a foundation, the State failed to adequately establish a foundation through this method because its witnesses did not testify that the handgun was in substantially the same condition as when it was recovered.

¶ 33           The State argues defendant failed to preserve this issue for review by failing to object to the foundation for admission of the handgun during the trial and for failing to clearly

raise the issue in a posttrial motion. "Ordinarily, a defendant must both specifically object at trial and raise the specific issue again in a posttrial motion to preserve any alleged error for review." *People v. Woods*, 214 Ill. 2d 455, 470 (2005). This forfeiture rule is "particularly appropriate" when a defendant argues the State failed to lay a proper foundation for the admission of evidence, as "a defendant's lack of a timely and specific objection deprives the State of the opportunity to correct any deficiency in the foundational proof at the trial level." *Id.*

¶ 34    In the instant case, defendant did not raise a foundation objection to the admission of the handgun during the trial. While defendant objected to the admission of the handgun, it was on the basis that "nothing ha[d] been presented to show that [defendant] possessed the gun." Defendant stated: "He's pointing me out saying that I am him, I am the guy; and he's not putting no factual evidence or no foundation to support that." While defendant used the word "foundation," it is clear that, in context, the objection was based on the alleged lack of evidence showing defendant was the person who possessed the handgun rather than a lack of foundation for the admission of the handgun. Accordingly, we find defendant forfeited his argument by failing to raise a specific foundation objection at trial.

¶ 35    Defendant argues that, even if we find the issue forfeited, we may review it under the first prong of the plain error doctrine. The first prong of the plain error doctrine allows a reviewing court to review a forfeited error "when a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error." *People v. Moon*, 2022 IL 125959, ¶ 20. "In determining whether the evidence adduced at trial was close, a reviewing court must evaluate the totality of the evidence and conduct a qualitative, commonsense assessment of it within the context of the case." *People v. Sebby*, 2017 IL 119445, ¶ 53.

¶ 36    When the State seeks to introduce an object into evidence, it must lay a foundation for the admission of the object either through a witness's identification of the object or by establishing a chain of custody. *Woods*, 214 Ill. 2d at 466. The character of the object determines which method the State must use. *Id.* "[W]here an item has readily identifiable and unique characteristics, and its composition is not easily subject to change, an adequate foundation is laid by testimony that the item sought to be admitted is the same item recovered and is in substantially the same condition as when it was recovered." *Id.* However, when the item is not readily identifiable or could be susceptible to tampering, contamination, or exchange, the State is required to establish a chain of custody sufficiently complete to make it improbable that the evidence was subject to tampering or accidental substitution. *Id.* at 467.

¶ 37    In the instant case, even if we were to accept defendant's argument that the State failed to lay an adequate foundation for the admission of the handgun, the evidence in the case was not closely balanced under the first prong of the plain error doctrine. Defendant was convicted of armed robbery, which required the State to establish he knowingly took property from the person or presence of another by the use of force or by threatening the imminent use of force while armed with a firearm. 720 ILCS 5/18-2(a)(2) (West 2022). Patel's testimony and the security camera footage established that a black man wearing black pants, a black jacket, and a gray hat entered the gas station on the day of the incident and took cash from the gas station's case register and safe while pointing a black and silver handgun at Patel. During his trial testimony, Patel identified defendant as the robber based on defendant's height, race, body language, and voice.

¶ 38    There was also significant circumstantial evidence showing defendant was the individual who committed the armed robbery. Later on the day of the robbery, defendant was

involved in a vehicle crash. He was driving a vehicle that matched the description of a vehicle that was visible on the gas station's security cameras shortly before the robbery occurred and that Fitzpatrick observed as he was driving to the gas station right after the robbery. Defendant was apprehended after crashing this vehicle, and a silver and black handgun consistent with the one used during the robbery was found on his person. Photographs of the handgun used during the robbery and the handgun recovered from defendant's person after the robbery were admitted into evidence. Photographs of a gray hat and black clothing that Henson testified defendant was wearing at the hospital after the crash were also admitted. This clothing was consistent with the clothing worn by the robber. A photograph of over $500 in cash, which Henson testified was recovered from defendant's person after the crash, was also introduced into evidence.

¶ 39       We reject defendant's argument that the evidence in this case was closely balanced because it hinged on Patel's credibility. Defendant contends Patel made a "weak identification" of him, given the short amount of time during which Patel observed the robber, the fact that the robber was wearing a mask, and the fact that Patel identified him months later based on his height, race, and voice. While the matters identified by defendant were certainly relevant to Patel's ability to identify defendant, the case did not solely turn on Patel's credibility or the strength of his identification testimony. As discussed, there was also significant circumstantial evidence that defendant was the individual who robbed the gas station.

¶ 40                                III. CONCLUSION

¶ 41       For the reasons stated, we affirm the trial court's judgment.

¶ 42       Affirmed.