NOTICE
Decision filed 03/05/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 220492

NO. 5-22-0492

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Perry County. |
| | ) | |
| v. | ) | No. 21-CF-87 |
| | ) | |
| ANZANO P. CHAMBLISS, | ) | Honorable |
| | ) | Jeffrey K. Watson, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE McHANEY delivered the judgment of the court, with opinion.
Justices Welch and Cates concurred in the judgment and opinion.

**OPINION**

¶ 1    On October 8, 2021, the defendant was charged by information with three counts of aggravated battery: count I alleged a battery resulting in great bodily harm (720 ILCS 5/12-3.05(a)(1) (West 2020)), and counts II and III alleged a battery on a public roadway (*id.* § 12-3.05(c)). After being found fit to stand trial on April 14, 2022, the defendant's jury trial was scheduled for May 26, 2022. On May 17, 2022, the State dismissed count I. After a jury trial, the defendant was convicted on counts II and III. On July 14, 2022, the defendant was sentenced on each count to concurrent four-year terms of imprisonment in the Department of Corrections.

¶ 2    Because the defendant was not provided with a preliminary hearing and was not alternatively indicted by a grand jury, there was no probable cause determination on the charges

1

he faced as required by our Illinois Constitution. See Ill. Const. 1970, art. I, § 7. For the following reasons, we reverse the defendant's convictions.

¶ 3                                              I. Background

¶ 4      We recite only the facts relevant to the narrow issue on appeal. On October 8, 2021, defendant was charged by information with three counts of aggravated battery for attacking Emily Barnes and Carolyn Spell on a public roadway in Perry County, Illinois. There was never a preliminary hearing held before trial, and the defendant was not indicted.

¶ 5      When the defendant was arrested, he had a pending misdemeanor in which the issue of his fitness to stand trial had been raised but not resolved. At the defendant's first appearance in the present case, his fitness continued to be an issue due to his behavior in court, at the jail, and with his attorney. A fitness evaluation was ordered, and all parties agreed that the delay in all proceedings, including the preliminary hearing, would be charged to the defendant.

¶ 6      During the evaluation process, the defendant was uncooperative with the doctor and the jail staff. On October 14, 2021, jail staff reported to the trial court the defendant's court appearance in court was impossible, whether in-person or by Zoom, due to his "current behavior."[1] On more than one occasion, either the defendant was removed from the courtroom, or court was abruptly adjourned due to the defendant's inability to follow orders. On October 28, 2021, after the trial court informed the defendant that his pending city ordinance violations had been dismissed, he demanded a bench trial on the dismissed charges. When the court attempted to explain that a trial of any kind on those ordinance violations was now unnecessary, the defendant shouted at Judge Julia R. Gomric, "F*** that, b***. I don't want to talk to you." On October 28, 2021, the defendant argued with Judge Gomric at length about his interpretation of the law and his desire to have the

---

[1]The record contains no description or explanation of the defendant's "current behavior."

fitness evaluation in open court and without his attorney present. On December 9, 2021, the defendant interrupted court proceedings to inform Judge Gomric that he was disabled, despite his attorney's acknowledgment of its irrelevance. On January 12, 2022, the defendant appeared before Judge Jeffrey K. Watson, asserting that Judge Gomric should have held him in contempt of court, while also claiming civil rights violations. The defendant also continuously requested his attorney to withdraw and filed numerous *pro se* motions that were found to have no merit. Similar repeated events caused further delay and disruption throughout the case.

¶ 7     The defendant was finally found fit to stand trial on April 14, 2022, eight months after his first appearance. On that same day, Judge Watson, who was now assigned to the defendant's case, heard defense counsel's motion to withdraw, which was granted, and the defendant was allowed to proceed *pro se*. A jury trial was set for May 26, 2022, and the defendant was again escorted out of the courtroom due to disruptive behavior. Forty-two days after the defendant was found fit to stand trial, the case proceeded to jury trial.

¶ 8     At trial, the State presented evidence that two correctional officers witnessed the defendant punching two women on the side of the road. The batteries occurred outside of a Shell Liquor Mart, which had video surveillance that recorded the incident, which was viewed by the jury. Emily Barnes testified that on October 8, 2021, she ran into an acquaintance, Carolyn Spell, and stopped to chat with her. While they were speaking, the defendant, who smelled of liquor and was shouting obscenities, approached the women. As the two women walked away, the defendant spit on Barnes and punched her on the side of her face and continued to strike Barnes after getting her to the ground. Spell testified that, as she attempted to get the defendant off of Barnes, he pushed her to the ground, where she scraped her knee and bent her toe backwards. The two correctional officers were able to intervene on behalf of both women, stopping the attack. During his case-in-

3

chief, the defendant recalled Barnes and Spell and then testified on his own behalf. The jury convicted the defendant on both counts of aggravated battery. The trial court sentenced the defendant to concurrent terms of four years' imprisonment, and the defendant filed a timely appeal.

¶ 9                                              II. Analysis

¶ 10    The issue before us presents a matter of first impression in that the defendant was afforded neither a preliminary hearing nor a grand jury indictment as mandated by our Illinois Constitution. See *id.* The defendant did not raise this issue prior to trial and failed to file a posttrial motion.

¶ 11    "To preserve a claim for review, a defendant must both object at trial and include the alleged error in a written posttrial motion." *People v. Thompson*, 238 Ill. 2d 598, 611-12 (2010). Therefore, the defendant has forfeited this issue. However, because the forfeiture rule is an admonition to the parties, and not a jurisdictional limitation on a reviewing court, we decline to apply forfeiture and, instead, will address the merits of the issue raised by the defendant. *People v. Chapman*, 379 Ill. App. 3d 317, 326 (2007). The normal forfeiture principles may be bypassed by the plain-error rule, which allows a reviewing court to consider unpreserved claims of error in specific circumstances. *Thompson*, 238 Ill. 2d at 613.

¶ 12    The first step in a plain-error review is to determine if an error occurred. *People v. Phillips*, 2022 IL App (1st) 181733, ¶ 125 (citing *Thompson*, 238 Ill. 2d at 613). If a clear or obvious error exists, a reviewing court will assess the error under one of the two prongs of plain-error review. See *id.* We apply the plain-error doctrine when

> " '(1) a clear or obvious error occurred and the evidence is so closely balanced that
> the error alone threatened to tip the scales of justice against the defendant,
> regardless of the seriousness of the error, or (2) a clear or obvious error occurred
> and that error is so serious that it affected the fairness of the defendant's trial and

4

challenged the integrity of the judicial process, regardless of the closeness of the evidence.' " *Thompson*, 238 Ill. 2d at 613 (quoting *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007)).

If a defendant establishes plain error under the second prong, there is a presumption of prejudice. *People v. Moon*, 2022 IL 125959, ¶ 27. "This is true because, when a trial error is of such gravity that it threatens the integrity of the judicial process, the courts must act to correct the error so that the fairness and the reputation of the process are preserved and protected." *Id.* (citing *People v. Green*, 74 Ill. 2d 444, 455 (1979) (Ryan, J., specially concurring)). The Illinois Supreme Court has equated second prong plain error with structural error. See *People v. Glasper*, 234 Ill. 2d 173, 197-98 (2009).

¶ 13     Before we reach the issue of structural error, we review the rationale for, and the foundational requirement of, a probable cause determination in criminal cases by a preliminary hearing or a grand jury indictment. The primary function of a preliminary hearing "is to determine whether there is sufficient indication that a crime has been committed by the accused to justify his further detention and to screen out weak and unsubstantiated cases which do not justify any further attention." Note, *The Function of the Preliminary Hearing in Federal Pretrial Procedure*, 83 Yale L.J. 771, 772 (1974). This preliminary examination is critically important in a criminal prosecution "both because of the protection it affords the accused and because of its strategic position in the criminal justice system and intimate interrelation with other aspects of the process—arrest, bail, prosecutorial discretion, the grand jury, and the trial." *Id.* at 772-73. The function of a preliminary hearing is "to provide an early and independent check on the initial decision of the police or the district attorney to prosecute." Delmar Karlen, Anglo-American Criminal Justice 145 (1967). In

5

the United States, "the prosecution is required to produce enough evidence to make out a prima facie case." *Id.*

¶ 14 The United States Supreme Court has provided guidance on the import of a prompt judicial determination of probable cause. See *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975). The probable cause determination is a prerequisite for an extended pretrial detention. *Id.* This protection for criminal defendants stems from the fourth amendment of the United States Constitution.[2] *Id.*; see U.S. Const., amend. IV. Recognizing that state systems of criminal procedure vary widely, *Gerstein* mandated that each state "provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer either before or promptly after arrest." *Gerstein*, 420 U.S. at 125.

¶ 15 We continue our analysis by reviewing applicable United States and Illinois constitutional and statutory provisions. The United States Constitution does not require that a person charged with a crime have a preliminary hearing before being brought into a court with jurisdiction over the charge. *United States ex rel. Hughes v. Gault*, 271 U.S. 142, 149 (1926). However, federal statutory law, amended over the years, requires a preliminary hearing under certain circumstances. See Fed. R. Crim. P. 5.1(a) (providing that, "[i]f a defendant is charged with an offense other than a petty offense, a magistrate judge must conduct a preliminary hearing unless: *** (2) the defendant is indicted"). The purpose of this preliminary examination is "to determine whether

---

[2]"At common law it was customary, if not obligatory, for an arrested person to be brought before a justice of the peace shortly after arrest. [Citations.] The justice of the peace would 'examine' the prisoner and the witnesses to determine whether there was reason to believe the prisoner had committed a crime. If there was, the suspect would be committed to jail or bailed pending trial. If not, he would be discharged from custody. [Citations.] The initial determination of probable cause also could be reviewed by higher courts on a writ of habeas corpus. [Citations.] This practice furnished the model for criminal procedure in America immediately following the adoption of the Fourth Amendment [citations], and there are indications that the Framers of the Bill of Rights regarded it as a model for a 'reasonable' seizure." *Gerstein*, 420 U.S. at 114-16.

there is probable cause to believe that an offense has been committed and that the arrested person has committed it." 18 U.S.C. § 3060(a) (2018).

¶ 16    The Illinois Constitution unequivocally provides a defendant in a felony criminal prosecution the right to a prompt preliminary hearing or an indictment by a grand jury, providing:

> "No person shall be held to answer for a crime punishable by death or by imprisonment in the penitentiary unless either the initial charge has been brought by indictment of a grand jury or the person has been given a prompt preliminary hearing to establish probable cause." Ill. Const. 1970, art. I, § 7.

Our legislature has also included provisions on this subject. The defendant's right to a preliminary hearing is codified in the Code of Criminal Procedure of 1963 (Code). Section 109-3(a) of the Code provides:

> "The judge *shall* hold the defendant to answer to the court having jurisdiction of the offense if from the evidence it appears there is probable cause to believe an offense has been committed by the defendant *** if the offense is a felony." (Emphasis added.) 725 ILCS 5/109-3(a) (West 2020).

Section 109-3.1(b) of the Code provides the State with the mandatory timeline for holding a preliminary hearing or receiving a grand jury indictment:

> "Every person in custody in this State for the alleged commission of a felony *shall* receive either a preliminary examination as provided in Section 109-3 or an indictment by Grand Jury as provided in Section 111-2, within 30 days from the date he or she was taken into custody." (Emphasis added.) *Id.* § 109-3.1(b).

Thus, without question, an Illinois felony defendant must either receive a preliminary hearing or be indicted by a grand jury within 30 days after entering custody.

7

¶ 17   With either process, the State's probable cause foundation is outlined for the defendant. "[T]he preliminary hearing is a 'critical stage' of the proceedings during which the accused must be afforded the assistance of counsel if he is to have a meaningful defense at trial as guaranteed in the Bill of Rights." *Coleman v. Alabama*, 399 U.S. 1, 12 (1970) (Black, J., concurring). An attorney is provided to a defendant at a preliminary hearing for many reasons. For example, defense counsel can cross-examine witnesses presented by the State, present his or her own witnesses, and a neutral party—the trial court judge—is required to decide whether sufficient probable cause exists to bind the defendant over for trial. See *id.* at 9 (majority opinion). "Illinois has long recognized that a preliminary hearing is a critical stage in prosecution." *People v. Black*, 2011 IL App (5th) 080089, ¶ 15.

> "The role of counsel at a preliminary hearing is not limited to assisting a defendant in his claim that there was no probable cause. Counsel at a preliminary hearing may assist the defendant in effectively discovering the strengths and weaknesses in the State's case, preserving favorable evidence, and strengthening the defendant's claim for [pretrial release] and the suppression of incriminating evidence." *Id.* ¶ 16.

¶ 18   Illinois caselaw provides additional guidance on these constitutional and legislative requirements. In *People v. Howell*, 60 Ill. 2d 117, 118 (1975), the defendant was arrested and held in jail until he was indicted 65 days later. After review of comments by the Committee on Style, Drafting and Submission—the committee that submitted section 7 of article I to the convention—the Illinois Supreme Court stated: "under this constitutional provision the defendant held on a criminal charge punishable by imprisonment in the penitentiary must be afforded a prompt probable-cause determination of the validity of the charge either at a preliminary hearing or by an indictment by a grand jury." *Id.* at 119 (citing *People v. Kent*, 54 Ill. 2d 161, 163 (1972)). In

8

*Howell*, the defendant was indicted by a grand jury, and thus, there was no need for the State to hold a preliminary hearing. See *id.* at 118-19. The Illinois Supreme Court noted that the 65-day delay, without providing the defendant with a prompt preliminary hearing or presenting his case to a grand jury, "violated the letter and intent of section 7 of article I of the 1970 Constitution." *Id.* at 119. "The delay in this case of 65 days is the most severe violation of section 7 that has been called to our attention." *Id.* at 122. Despite the delay, the Illinois Supreme Court affirmed the defendant's conviction because he failed to raise the issue at the trial court. *Id.* at 120. However, the court acknowledged that delays in giving the accused a prompt preliminary hearing constitute a serious deprivation of a defendant's constitutional rights. *Id.*

¶ 19    In *People v. Kirkley*, 60 Ill. App. 3d 746, 747 (1978), the defendants were arrested on January 23, 1975. Although the defendants filed motions requesting a preliminary hearing, no preliminary hearing was ever held. *Id.* at 748. On July 18, 1975, 176 days after their arrest, the defendants were indicted by a grand jury. *Id.* Finding that the case before it was the most flagrant section 7 violation called to the attention of Illinois reviewing courts, and noting the absence of any legislative guidelines or sanctions regarding such violations, the court reversed the defendants' convictions. *Id.* at 750. The *Kirkley* court stated, "[W]e feel compelled to provide a remedy for the defendants who have suffered an unjustifiable denial of a basic constitutional right." *Id.* We find that the facts of this case are more egregious than the facts in *Kirkley*.

¶ 20    The State's reliance upon this court's opinion in *People v. Riddle*, 141 Ill. App. 3d 97 (1986), is misplaced. For numerous reasons, we find that *Riddle* is distinguishable. In *Riddle*, the defendant was charged with a felony on February 14, 1983. *Id.* at 100. The defendant was not indicted by a grand jury, and a preliminary hearing was not held until May 9, 1983—84 days after his arrest. *Id.* The trial court denied the defendant's motion to dismiss the information. *Id.*

Following his conviction, the defendant appealed to this court, arguing in part that he was denied a prompt preliminary hearing in violation of article I, section 7, of the Illinois Constitution. *Id.* In support of his argument, the defendant asked this court to follow the reasoning of *Kirkley*. *Id.* at 101. We opted not to follow *Kirkley*, finding that, although an 84-day delay between the defendant's arrest and preliminary hearing violated the letter and intent of section 7, "dismissal with prejudice is not available to a defendant as a sanction for such a violation." *Id.* at 100.

¶ 21 Initially, we note that, at the time *Riddle* was decided, section 109-3.1(b) of the Code had yet to be enacted by our legislature and so did not apply on the date that Glen Riddle was arrested—February 14, 1983. Section 109-3.1 of the Code took effect on January 1, 1984, and expressly only applied to persons charged with a felony "alleged to have been committed on or after January 1, 1984." Ill. Rev. Stat. 1983, ch. 38, ¶ 109-3.1(a). On or after January 1, 1984, the State was required to either conduct a preliminary examination or return a grand jury indictment within 30 days of the date the defendant was taken into custody. *Id.* ¶ 109-3.1(b).

¶ 22 In addition, we find *Riddle* to be factually distinguishable. First, in *Riddle*, the defendant remained free on bond, while the defendant here remained in custody. *Riddle*, 141 Ill. App. 3d at 100. Second, in *Riddle*, though certainly not prompt, there was a preliminary hearing, while the defendant in this case received neither a preliminary hearing nor a grand jury indictment. There is no question that, here, error occurred by the failure to either indict the defendant or conduct a preliminary hearing.

¶ 23 We must next determine if the error in not indicting the defendant or conducting a preliminary hearing was "structural" in nature, necessitating reversal. "An error is typically designated as 'structural' and requiring automatic reversal only if it necessarily renders a criminal trial fundamentally unfair or unreliable in determining guilt or innocence." *People v. Averett*, 237

10

Ill. 2d 1, 12-13 (2010) (citing *Glasper*, 234 Ill. 2d at 196). "Structural errors are systemic, serving to 'erode the integrity of the judicial process and undermine the fairness of the defendant's trial.' " (Internal quotation marks omitted.) *Thompson*, 238 Ill. 2d at 608-09 (quoting *Glasper*, 234 Ill. 2d at 197-98). The United States Supreme Court has held that an error constitutes structural error if the error has " 'consequences that are necessarily unquantifiable and indeterminate.' " *United States v. Gonzalez-Lopez*, 548 U.S. 140, 150 (2006) (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 282 (1993)). The United States Supreme Court has only classified error as "structural error" in a limited class of cases. *Thompson*, 238 Ill. 2d at 609 (citing *Glasper*, 234 Ill. 2d at 198, citing *Neder v. United States*, 527 U.S. 1, 8 (1999)). These cases include "a complete denial of counsel, trial before a biased judge, racial discrimination in the selection of a grand jury, denial of self-representation at trial, denial of a public trial, and a defective reasonable doubt instruction." *Id.* (citing *Washington v. Recuenco*, 548 U.S. 212, 218 n.2 (2006)).

¶ 24　Error can be classified as structural as a matter of state law, irrespective of whether the error is construed as structural under federal law. Illinois has found that a trial court's blanket policy of refusing to rule on motions *in limine* until after hearing the defendant's testimony does not constitute structural error. See *Averett*, 237 Ill. 2d at 13. While the error was deemed serious, the supreme court concluded that the error did not render the trial fundamentally unfair or unreliable and did "not affect the framework of the trial process." *Id.* at 13-14; see *People v. Stoecker*, 2020 IL 124807, ¶ 25 (holding that "a reasonable opportunity to respond to a dispositive motion in a collateral civil proceeding and lack of notice before it was dismissed as a matter of law," although serious, was not structural error because the error did not "necessarily render the proceedings automatically unfair or unreliable"); *People v. Rivera*, 227 Ill. 2d 1, 22 (2007) (if the error could be qualitatively assessed for harm to the defendant, the error is not structural, and

11

would only require harmless error review). In *Arizona v. Fulminante*, 499 U.S. 279 (1991), the United States Supreme Court

> "explained that constitutional errors that occur during the course of a trial are susceptible to harmless-error review, because such errors can be 'quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt. As for those constitutional errors that remained *per se* reversible without a finding of harmlessness—such as violations of one's right to counsel, or one's right to be tried before an impartial judge—those errors cannot simply be 'assessed in the context of other evidence.' Instead, those are 'structural defects' that affect 'the constitution of the trial mechanism, which defy analysis by "harmless error" standards.' " Zachary L. Henderson, *A Comprehensive Consideration of the Structural-Error Doctrine*, 85 Mo. L. Rev. 965, 972 (2020).

More recently, the Illinois Supreme Court found that the trial court's failure to administer the trial oath to the jury at any time before the jury rendered its verdict constituted structural error. See *Moon*, 2022 IL 125959, ¶¶ 62, 65-66.

¶ 25     We hold that the failure to conduct either a preliminary hearing or return a bill of indictment must be included in that limited class of cases recognized as structural error. The Illinois constitutional mandate that an individual charged with a felony must receive a preliminary hearing or be indicted by a grand jury is connected to the State's obligation to establish probable cause to charge that individual. Ill. Const. 1970, art. I, § 7. Here, the State never set forth its foundation for the charge against the defendant and never confirmed that the defendant was the individual who allegedly committed the crime. We find that this error deprived the defendant of the basic

protections afforded by our constitution and, thus, proceeding forward with the prosecution without providing that protection resulted in an unfair or unreliable process for the determination of the defendant's guilt or innocence. See *Neder*, 527 U.S. at 8-9 (citing *Rose v. Clark*, 478 U.S. 570, 579 (1986)).

¶ 26    With respect to the appropriate remedy for this constitutional violation, we believe that to grant the defendant a probable cause hearing after his constitutional rights have already been violated would be "ludicrous." *Kirkley*, 60 Ill. App. 3d at 750. "It would be senseless to reverse the defendants' conviction[ ] and remand this case so that they could be subjected to a reindictment." *Id.* (citing *People v. Hendrix*, 54 Ill. 2d 165, 169 (1973)). We conclude that the appropriate remedy in this case for failing to provide the defendant with a probable cause hearing or the return of a bill of indictment is to reverse the defendant's convictions.

¶ 27    As illustrated by our decision, this case is about due process—the right of every person charged with a crime punishable by imprisonment to a determination of probable cause for the charge, through either a prompt preliminary hearing or grand jury proceeding, even where the evidence of guilt is overwhelming. See Ill. Const. 1970, art. I, § 7; 725 ILCS 5/109-3(a), (b) (West 2020). There is no doubt this case was fraught with disruption and delay, much of it attributable to the defendant. Nonetheless, the error in this case was neither harmless nor excusable. Illinois courts—both trial courts and courts of review—have a solemn duty to safeguard the rights of every person to procedural due process when charged with a serious offense and to apply the law in an equal and fair manner. That has now been done here.

¶ 28                                    III. Conclusion

¶ 29    For the above reasons, we reverse the defendant's convictions and vacate his sentences.

13

¶ 30    Reversed.

*People v. Chambliss*, 2024 IL App (5th) 220492

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Perry County, No. 21-CF-87; the Hon. Jeffrey K. Watson, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Ellen J. Curry, and Julie A. Thompson, of State Appellate Defender's Office, of Mt. Vernon, for appellant. |
| **Attorneys for Appellee:** | David Rands, Special State's Attorney, of Springfield (Patrick Delfino, Patrick D. Daly, and Trent Marshall, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |