2024 IL App (2d) 220076
No. 2-22-0076
Opinion filed June 27, 2024

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 20-CF-690 |
| FRANK E. RYAN, | ) ) | Honorable David Kliment, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE MULLEN delivered the judgment of the court, with opinion.
Justices Schostok and Kennedy concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a bench trial on stipulated evidence, defendant, Frank E. Ryan, was convicted of possession of a firearm while ineligible for a Firearm Owners Identification (FOID) card (count I) (430 ILCS 65/2(a)(1) (West 2020)); two counts of aggravated unlawful use of a weapon (counts II and III) (720 ILCS 5/24-1.6 (West 2020)); and a violation of the conditions of his bail bond (count IV) (*id.* § 32-10(a-5)). On appeal, he argues that the trial court erred by conducting a bench trial on stipulated evidence over Zoom videoconferencing. He also contends that the latter three counts should be vacated on one-act, one-crime principles. We reverse and remand.

¶ 2    Before proceeding further, we note that defendant has filed a motion to strike portions of the State's brief, arguing that they advance arguments that are not relevant. We ordered that motion

taken with the case. This motion is denied, and we will give those arguments whatever consideration they are due.

¶ 3                                    I. BACKGROUND

¶ 4      Prior to trial, defendant filed a motion to suppress an item of personal property (a shotgun) recovered by the police during a search of his pickup truck, contending the search was illegal. At a hearing on the motion, defendant testified that on April 9, 2020, at about 3 a.m., he was in Elburn, "seeking some answers to some questions that [he] was going over with [his] psychiatrist." He was attempting to turn around "off of a gravel pavement" and his "front wheels got stuck in some mud." He called a tow truck. Shortly after the tow truck arrived, a police car did as well. A uniformed officer approached and asked defendant for identification. Defendant complied. Defendant told the officer he was in Elburn seeking answers to some questions. The officer patted defendant down and placed him in handcuffs. Defendant testified that he did not feel free to leave at this point. The officer searched defendant's truck. The officer did not ask for, and defendant did not grant, permission to search his truck.

¶ 5      On cross-examination, defendant admitted that he was "on bond" and "there was a condition that [he was] not to go near" a particular residence in Elburn. He acknowledged that one could see that residence from where his truck was stuck. He also agreed that the area where he was stuck was "an industrial area [where he] had no business being in at 3:00 in the morning." Prior to searching his truck, the officer asked defendant if there was anything in the truck that the officer should be aware of. Defendant, who was in the back of the police car at the time, replied that there was a loaded shotgun in the truck. Based on defendant's testimony, the trial court found that the burden shifted to the State to establish that the search was reasonable.

¶ 6 Ubaldo Scudiero, a police officer with the Village of Elburn, then testified that, at approximately 3 a.m. on April 9, 2020, he responded to a call of a pickup truck stuck in the mud on a gravel path in an industrial area. The truck belonged to defendant. A tow truck and its driver were already present. Scudiero, who arrived alone, made contact with defendant. Scudiero asked defendant how he came to be stuck. Defendant did not say anything about "seeking answers"; instead, he said something "about his brother and a female friend of this brother's," which he soon acknowledged was a lie. Defendant produced an Illinois driver's license. Scudiero recognized defendant's name from an earlier investigation. He was aware that defendant was on bond awaiting trial in an attempted murder case and that the victim of that crime lived across the field from where defendant was stuck.[1] Scudiero requested backup and learned from dispatch that defendant's FOID card had been revoked.

¶ 7 Scudiero testified that it was a "secluded, dark area." Defendant began looking around and behaving "fidgety," and Scudiero thought defendant might be looking for a place to run. He placed defendant in handcuffs and walked him away from the truck to his squad car. He asked defendant if there was anything in the truck that he should know about, and defendant stated that there was a loaded shotgun in the truck. Another officer arrived at that point. Scudiero approached defendant's truck, and, in plain view, "under the back bench [(inside the cab)] was a shotgun." Scudiero then placed defendant under arrest.

---

[1]That case was tried after this trial. Defendant was found guilty, and this court affirmed. *People v. Ryan*, 2023 IL App (2d) 220414, *pet. for leave to appeal pending*, No. 130370 (filed Feb. 27, 2024).

¶ 8     On cross-examination, Scudiero acknowledged that, when he first approached defendant, defendant was not doing anything illegal. There was no warrant out for defendant. Defendant never tried to run. Scudiero stated that defendant did not consent to a search of his truck, and Scudiero did not obtain a search warrant. On redirect, Scudiero stated that he knew defendant was not supposed to be in the area of the victim's house, which was in the direct path of travel and within eyesight of where defendant was found.

¶ 9     The trial court denied defendant's motion to suppress. Five status hearings followed, which were all conducted via Zoom videoconferencing. During these hearings, the parties indicated that they were negotiating the resolution of the case.

¶ 10     On January 13, 2022, with defendant appearing via Zoom, a status hearing was held. The parties informed the trial court that they had agreed on proceeding with a bench trial on stipulated evidence. They presented the court with a written stipulation. The court passed the case to allow defendant to review the stipulation. When the case resumed, the court reviewed the stipulation with defendant. The court verified that defendant had reviewed the stipulation with his attorney and had signed it. Defendant indicated that he "want[ed] to proceed in this fashion."

¶ 11     The written stipulation provided as follows. At trial, the State would call Officer Scudiero. He would testify that on April 9, 2020, at 2:56 a.m., he was dispatched to a location in Elburn to assist a motorist. When he arrived, he noted a pickup truck stuck in the mud. A tow truck was present. Defendant was standing near the pickup truck. Defendant produced a driver's license, and Scudiero recognized defendant from a prior incident in Elburn in which defendant was involved. The victim of the prior incident lived "in close proximity" to where defendant's truck was stuck. When Scudiero asked whether there was anything in the truck that he should be aware of, defendant replied that there was a loaded shotgun under the rear seat. Scudiero, accompanied by

Officer Sheets, approached the truck and observed the shotgun in an unzipped black soft case. It was accessible from the driver's seat and was loaded.

¶ 12    Scudiero would further testify that, as he was transporting defendant to the police station, defendant called his father. Defendant stated that "he f*** up" and that "he took one of the shotguns and was going to bring it home but he forgot he left it in the truck." At the police station, defendant told Scudiero that he had driven to the location where his truck was stuck and had just been sitting there. He forgot the shotgun was in the truck, "because he switches between vehicles."

¶ 13    The parties further stipulated that Randall Wilson of the Illinois State Police FOID card records division would testify that defendant did not have a valid FOID card on April 9, 2020. They further stipulated that one of the conditions of defendant's bond was that he "shall not possess a firearm or dangerous weapon and [that] defendant shall surrender any firearm, FOID card and concealed carry license to the police department."

¶ 14    The court took the matter under advisement, and, a week later, the matter was reconvened via Zoom and the trial court found defendant guilty of all four charged offenses. Defendant filed a motion for a new trial in which he argued that the trial court erred in denying his motion to suppress, that he was denied due process and equal protection of law, and that "[t]he State failed to prove every material allegation of the offense beyond a reasonable doubt." This motion was denied. The trial court then sentenced defendant to two years' imprisonment with credit for 692 days served in pretrial custody. This appeal followed.

¶ 15                                    II. ANALYSIS

¶ 16    On appeal, defendant raises two issues. First, defendant argues that the trial court erred by conducting defendant's bench trial on stipulated evidence via Zoom videoconferencing. Second,

defendant contends that three of his convictions should be vacated on one-act, one-crime principles.

¶ 17                              A. The Stipulation

¶ 18    Defendant first asserts that the trial court should not have conducted a bench trial on stipulated evidence without securing a proper waiver from him of his right to be present. Defendant acknowledges that this issue was not properly preserved and asks that we conduct second prong plain-error review. The plain-error rule bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved claims of error in specific circumstances. *People v. Averett*, 237 Ill. 2d 1, 18 (2010).

¶ 19    Before proceeding further, we note that the State asserts that defendant invited any error regarding the use of the videoconferencing procedure for the stipulated bench trial, which would render plain-error review unavailable. *People v. Harding*, 2012 IL App (2d) 101011, ¶ 17. Generally, under the doctrine of invited error, a defendant "may not request to proceed in one manner and then later contend on appeal that the course of action was in error." *People v. Carter*, 208 Ill. 2d 309, 319 (2003). The State points out that the trial court reviewed the proposed stipulation with defendant via videoconferencing. The trial court explained, "It's called a 'Stipulation for Bench Trial.' You've discussed with your lawyer what a stipulated bench trial is?" Defendant answered affirmatively. The trial court then asked whether defendant "want[ed] to proceed in this fashion," and defendant stated that he did. According to the State, "During this exchange, defendant clearly indicated he wished to proceed in the manner described by the court." The State continues, "Given that he was present via videoconference and agreed that he wanted to 'proceed in this fashion,' his claim that proceeding in that very manner constitutes error should be rejected under the doctrine of invited error."

¶ 20     We disagree. The State's argument attempts to exploit the ambiguity in the phrase, "in this fashion." The State contends that it encompasses the videoconferencing procedure; however, read in context, it appears to us to refer to the conduct of the bench trial on stipulated evidence. *People v. Coan*, 2016 IL App (2d) 151036, provides guidance here. In that case, the State tendered a number of jury instructions, one of which addressed the burden of proof. On appeal, the defendant sought to challenge the instruction. The State asserted that the defendant acquiesced in its use, as he failed to object during the instruction conference. The State argued that the "defendant's failure to object to the instruction was not 'mere oversight,' as he objected to the use of other instructions." *Id.* ¶ 22. We found the invited-error doctrine inapplicable. *Id.* ¶ 24. Thus, in *Coan*, we declined to presume acquiescence from the defendant's failure to object to certain instructions while objecting to others. Similarly here, we will not construe defendant's agreement to proceed with the bench trial on stipulated evidence as acquiescence in the videoconferencing procedure.

¶ 21     The plain-error doctrine, as it has developed in Illinois, allows that, under two circumstances, a forfeited error affecting substantial rights may be reached by a reviewing court. *People v. Herron*, 215 Ill. 2d 167, 178 (2005). Under the first prong, where the evidence in a case is so closely balanced that the verdict may have resulted from the error and not the evidence, a reviewing court may consider a forfeited error to ensure that an innocent person was not wrongly convicted. *Id.*; see, *e.g.*, *People v. Sebby*, 2017 IL 119445, ¶ 70 (rejecting State's request to "retool[ ] requirement of prejudice under the first prong" of plain error). Under the second prong, where the error is so serious that the defendant was denied a substantial right, and thus a fair trial, a reviewing court may consider a forfeited error to preserve the integrity of the judicial process. *Sebby*, 2017 IL 119445, ¶ 50. Second prong errors are "presumptively prejudicial errors—errors that may not have affected the outcome, but must still be remedied because the error deprive[d]

the defendant of a fair trial." (Internal quotation marks omitted.) *People v. Moon*, 2022 IL 125959, ¶ 24 (citing *Herron*, 215 Ill. 2d at 185).

¶ 22    Our supreme court has held that, under the second prong of Illinois's plain-error rule, the court must determine whether structural error occurred and, once structural error is found, automatic reversal is required. *Id.* ¶ 74 (holding structural error where unsworn jury convicted defendant). The initial analytical step under either prong of the plain-error doctrine is determining whether there was a clear or obvious error at trial. *Sebby*, 2017 IL 119445, ¶ 49. Whether a clear error occurred and whether it constitutes second prong plain error is reviewed *de novo*. See *Moon*, 2022 IL 125959, ¶ 25; *People v. Johnson*, 238 Ill. 2d 478, 485 (2010).

¶ 23    Initially, we address whether there was clear or obvious error. We hold that there was. First, we note that Illinois Supreme Court Order M.R. 30370, which addressed issues raised by the COVID-19 pandemic, was in effect at the time of the proceedings in question. Ill. S. Ct., M.R. 30370 (eff. Mar. 8, 2021). In its brief, the State contends that defendant did not properly raise this order and, therefore, has forfeited any reliance on it. See *People v. Polk*, 2014 IL App (1st) 122017, ¶ 49 (Gordon, P.J., dissenting) (citing Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013)). Forfeiture, however, is a limitation on the parties, not the reviewing court, and we may overlook forfeiture when necessary to reach a just result or maintain a sound body of precedent. *People v. Acosta*, 2024 IL App (2d) 230475, ¶ 15.

¶ 24    In a series of orders, our supreme court addressed issues raised by the COVID-19 pandemic. See *People v. Mayfield*, 2023 IL 128092 (outlining the history of the emergency orders in response to the pandemic). The order in effect on the date of the two January 2022 hearings in question discussed remote hearings for adult criminal matters and outlined four categories: those that could be held remotely without a waiver, those that required a waiver, those that required

written consent by the defendant and specific findings by the trial court, and, finally, those that could not be held remotely even with consent. Ill. S. Ct., M.R. 30370 (eff. Mar. 8, 2021).[2] Bench trials on stipulated evidence were placed in the third category, requiring consent in writing, detailed findings by the trial court concerning the defendant's understanding of his rights and the import of the waiver, and a finding by the court that remote proceedings will not jeopardize the integrity of the trial process. *Id.* None of that occurred here.

¶ 25    Relevant to whether any error occurred, both the Illinois Constitution and the United States Constitution recognize a criminal defendant's right to be present at all critical stages in his or her trial, from arraignment to sentencing. *People v. Lindsey*, 201 Ill. 2d 45, 55 (2002). The right to be present is an implied right, arising from the due process clause of the fourteenth amendment. U.S. Const., amend. XIV, § 1; *Lindsey*, 201 Ill. 2d at 55. The Illinois Constitution expressly affords the right to "appear and defend in person and by counsel." Ill. Const. 1970, art. I, § 8. This right is extended to all procedural stages that are critical to the outcome of the case if the defendant's "presence would contribute to the fairness of the procedure" (*Kentucky v. Stincer*, 482 U.S. 730, 745 (1987))—"in other words, a critical stage of trial" (*People v. Bean*, 137 Ill. 2d 65, 84 (1990) (jury selection is a critical stage but defendant's absence from *in camera* portion of *voir dire* of six jurors was not plain error)). There is no absolute right of presence. *Bean*, 137 Ill. 2d at 82; see *Snyder v. Massachusetts*, 291 U.S. 97, 106-07 (1934) ("Nowhere in the decisions of this court is there a *dictum*, and still less a ruling, that the Fourteenth Amendment assures the privilege of

---

[2]An amendment to Illinois Supreme Court Order M.R. 30370 (eff. Apr. 20, 2023) vacated these provisions, but many of them were memorialized and permitted under Illinois Supreme Court Rule 45 (eff. Jan. 1, 2023), which requires specified procedures.

presence when presence would be useless, or the benefit but a shadow."). A defendant's presence is a condition of due process, however, only to the extent that a fair and just hearing would be denied by the defendant's absence. *Bean*, 137 Ill. 2d at 83.

¶ 26    In this case, the stipulated bench trial was conducted over two hearings. At the first hearing, the court ascertained defendant's agreement with the procedure of trial by stipulation and the written stipulation was presented. At the second hearing, the court found defendant guilty. We find that both hearings were critical stages. "[I]t has been recognized that any proceeding where a defendant asserts or waives constitutional rights may be deemed 'critical.' " *Lindsey*, 201 Ill. 2d at 56. The first hearing resulted in defendant's waiver of the right to see and hear the witnesses against him. Like a guilty plea, a defendant's agreement to stipulate to the State's evidence is a "decisive moment for the defendant in the criminal process," obviating the prosecution's need to present witnesses. *People v. Guttendorf*, 309 Ill. App. 3d 1044, 1046 (2000). Surely that first hearing was critical to the outcome of the matter, and defendant's presence was the linchpin of "the fairness of the procedure." *Stincer*, 482 U.S. at 745.

¶ 27    Turning to the second hearing, where the court announced that it had found defendant guilty, we note that *People v. Aguilar* surveyed the law regarding the right of presence at the court's ruling in a bench trial and held that it was "arguably a critical stage of trial." *Aguilar*, 2020 IL App (1st) 161643, ¶ 43 (finding that bench ruling without interpreter for non-English speaking defendant presented the gist of a constitutional claim in postconviction petition). *Aguilar* relied on *United States v. Canady*, 126 F.3d 352, 360-61 (2d Cir. 1997), which held that a district court's mailing of its decision in a criminal case to the parties violated the right of presence. *Canady* rejected the government's argument that the defendant's presence at a pronouncement hearing would have been useless, finding a "useful purpose in ensuring that the pronouncement of the

defendant's guilt or innocence by the court is both face-to-face and public." *Id.* at 361. We agree. The court's announcement of its verdict was also a critical stage. Therefore, based upon the supreme court's order regarding remote hearings and our review of the constitutional principles, we conclude that the conduct of this bench trial on stipulated evidence via Zoom videoconferencing without the consent of defendant was error.

¶ 28 This finding of error does not end our analysis of defendant's claim, however. We must determine if the denial of the right to be present affected a substantial right. As our supreme court recently said,

" '[A] defendant is not denied a constitutional right every time he is not present during his trial, but only when his absence results in a denial of an underlying substantial right, in other words, a constitutional right; and it is only in such a case that plain error is committed.' " *People v. Brown*, 2023 IL 126852, ¶ 15 (quoting *Bean*, 137 Ill. 2d at 81) (holding a defendant's absence at sidebar where attorneys accepted or struck jurors was not plain error, nor was appellate counsel's performance deficient).

See *Lindsey*, 201 Ill. 2d at 56 (finding that a defendant was absent from a critical stage of trial does not end the inquiry: "The right to be present, even at a critical stage of the proceedings, is not absolute").

¶ 29 In *Lindsey*, 201 Ill. 2d 45, undertaking a plain-error review, the court considered whether the defendant's appearance via closed-circuit television at his arraignment and at another hearing where he waived his right to a jury trial violated his state or federal constitutional rights because he had not expressly consented to that the procedure. The court first recognized both hearings as critical stages of the defendant's trial. *Id.* at 55-56. It then considered "in the light of the whole

record" whether fairness was affected by the defendant's video appearance. (Internal quotation marks omitted.) *Id.* at 57-58.

¶ 30    Noting the defendant's interaction with the trial court and ability to see and hear during the proceedings, the court concluded that the defendant was "aware of the nature and significance of the proceedings and the overall solemnity of the proceedings was preserved." *Id.* at 58. The court observed that, while the defendant "was not physically present in the courtroom for his arraignment and jury waiver, neither was he entirely absent from these proceedings." *Id.* Looking to the trial court's responsibilities at the hearing and the effect of a remote appearance, the court stated that, since the defendant pleaded not guilty at the arraignment, there was no need for the court to assess his demeanor. *Id.* at 58-59. The court also found it meaningful that the defendant initiated the waiver of his jury-trial right and that the record "clearly conveyed" a knowing and voluntary waiver of a jury. *Id.* at 59. Accordingly, the court concluded that the defendant was denied neither due process nor any underlying right as a result of his participating in these proceedings via closed-circuit television. *Id.* at 60.

¶ 31    In contrast, *People v. Stroud*, 208 Ill. 2d 398, 413-14 (2004), categorically held that a defendant's closed-circuit television appearance at his guilty plea proceeding, without his consent on the record, violated his constitutional rights. *Stroud* concerned a postconviction attack on the defendant's remote guilty plea as involuntary—despite the lack of a motion to withdraw the guilty plea—because he was not advised of his right to be physically present. *Id.* at 403. *Stroud* distinguished *Lindsey*'s televised arraignment and jury waiver: "The number and gravity of the rights at stake at a guilty plea hearing are greater than when a defendant intends to plead not guilty at arraignment." *Id.* at 406.

¶ 32    The court found that, although the remote defendant was "not entirely absent," he was "*physically* absent from the most decisive moment of the criminal proceedings against him." (Emphasis added.) *Id.* at 409. It held, "We believe that [the] defendant's physical presence would have contributed to the fairness of the proceeding." *Id.* Emphasizing "the importance of the courtroom itself in contributing a dignity essential to the integrity of the trial process," the *Stroud* court concluded that "a defendant's appearance at a guilty plea proceeding via closed-circuit television is constitutionally permissible only if the defendant waives the right to physical presence on the record after being advised of his right to be present." (Internal quotation marks omitted.) *Id.*

¶ 33    *Stroud* cited *Guttendorf*, 309 Ill. App. 3d at 1047, with approval. *Stroud*, 208 Ill. 2d at 406-07. *Guttendorf* found plain error where a guilty plea was taken over closed-circuit television. *Guttendorf*, 309 Ill. App. 3d at 1048. The *Guttendorf* court held that the remote procedure violated the right to be physically present in court at a critical stage, resulting in the denial of a substantial right and depriving the defendant of fundamental fairness in the proceeding. *Id.*

¶ 34    Like the *Stroud* court, *Guttendorf* examined the role of the courtroom: A courtroom "is more than a location with seats for a judge, jury, witnesses, defendant, prosecutor, defense counsel and public observers; the setting that the courtroom provides is itself an important element in the constitutional conception of trial, contributing a dignity essential to the integrity of the trial process." (Internal quotation marks omitted.) *Id.* at 1046-47 (citing *Estes v. Texas*, 381 U.S. 532, 561 (1965) (Warren, C.J., concurring, joined by Douglas and Goldberg, JJ.)). Like the *Lindsey* court, *Guttendorf* looked to the trial court's responsibilities at the hearing and the effect of a remote appearance and noted that, in a remote guilty plea hearing, "crucial aspects of a defendant's physical presence may be lost or misinterpreted." *Id.* at 1047.

¶ 35    The defense argues that the remote bench trial on stipulated evidence in this case is analogous to the guilty plea in *Stroud* and distinguishable from the arraignment and jury waiver in *Lindsey*. The State argues that, unlike the guilty plea in *Stroud*, the bench trial on stipulated evidence here did not implicate any of defendant's substantial rights. In distinguishing *Stroud*, the State points to the line of cases that differentiate between bench trials on stipulated evidence that preserve a defense and bench trials on stipulated evidence that are tantamount to a plea of guilty. See, *e.g.*, *People v. Villarreal*, 2022 IL App (2d) 200077 (collecting cases). Where the bench trial on stipulated evidence is tantamount to a plea of guilty, Illinois Supreme Court Rule 402 (eff. July 1, 2012) admonitions are required (see, *e.g.*, *People v. Smith*, 59 Ill. 2d 236, 242-43 (1974)); where the bench trial on stipulated evidence preserves a defense and is not tantamount to a plea of guilty, Rule 402 admonitions are not required. See *People v. Horton*, 143 Ill. 2d 11, 21-22 (1991) (where no Rule 402 admonitions were given in either of two bench trials based on stipulated evidence, affirming conviction that was not tantamount to a plea of guilty and reversing conviction where counsel stipulated to sufficiency of evidence).

¶ 36    The State's argument is that, because defendant's bench trial on stipulated evidence preserved a defense,[3] it was not tantamount to a plea of guilty and, therefore, it did not require Rule 402 admonitions. From that proposition, because *Stroud* involved a remote guilty plea, the State leapfrogs to the conclusion that *Stroud* does not apply. We do not think that meaningfully distinguishes *Stroud*. While Rule 402 admonitions were not required, defendant was giving up substantial rights. It was at least as important that the trial court ensure that defendant understood the bench trial on stipulated evidence (without the benefit of Rule 402 admonitions) as it was for the trial court in *Stroud* to protect the defendant's rights regarding the guilty plea.

_____

[3]The issues in the suppression motion have not been raised in this court, however.

¶ 37    As defendant points out, this court has described a stipulated bench trial this way:

"A stipulated bench trial is a legal fiction created solely to give defendants the benefit and convenience of a guilty plea while avoiding the consequences of waiver or forfeiture. [Citation.] In a stipulated bench trial, a defendant enters a plea of not guilty, and a 'trial' is held based on a set of facts agreed to by the parties. Although there is a remote theoretical possibility that the defendant may be acquitted, the reality is that factual guilt is a foregone conclusion. After all, neither a reasonable defendant nor a prosecutor will choose to pursue a stipulated bench trial (or guilty plea) if the evidence is doubtful. Thus, once a stipulated bench trial is conducted, the defendant will *a fortiori* be found guilty by the trial court." *People v. Gonzalez*, 313 Ill. App. 3d 607, 617 (2000).

¶ 38    In agreeing to a bench trial on stipulated evidence, defendant's guilt became "a foregone conclusion" (*id.*), and he waived the important right to see, hear, and cross-examine the witnesses against him. As the court in *Stroud* believed, so do we believe that "defendant's physical presence would have contributed to the fairness of the proceeding[s]." *Stroud*, 208 Ill. 2d at 409. The "number and gravity of the rights at stake" (*id.* at 406) are a hair's breadth away from those waived by a guilty plea. We find *Stroud* determinative and hold that conducting a bench trial on stipulated evidence via videoconferencing without defendant's knowing consent to do so was structural error. If we are to understand that the courtroom itself provides "an important element in the constitutional conception of trial, contributing a dignity essential to the integrity of the trial process" (internal quotation marks omitted) (*Guttendorf*, 309 Ill. App. 3d at 1046-47), then any other conclusion denigrates our conception of the trial process. These decisive moments should be solemnized in person, absent a knowing consent. Because we hold that structural error occurred, there is no need to determine what prejudice, if any, accompanied the error. *Moon*, 2022 IL

125959, ¶ 74; see also *People v. Glasper*, 234 Ill. 2d 173, 197-98 (2009) (holding that automatic reversal is required only where structural error has occurred); *People v. Chambliss*, 2024 IL App (5th) 220492, ¶ 12, *pet. for leave to appeal granted*, No. 130585 (May 29, 2024). Moreover, structural error constitutes second-prong plain error. *Chambliss*, 2024 IL App (5th) 220492, ¶ 12 (citing *Glasper*, 234 Ill. 2d at 197-98). We reverse and remand for a new trial.

¶ 39                                B. One-Act, One-Crime

¶ 40    Defendant next contends, and the State partially agrees, that a number of his convictions should be vacated pursuant to the one-act, one-crime doctrine. See *People v. Woods*, 2018 IL App (1st) 153323, ¶ 42. Given the parties' reasonable disagreement on this issue, it is likely to recur on retrial; therefore we will address it here. See *People v. Dismuke*, 2017 IL App (2d) 141203, ¶ 61. The one-act, one-crime doctrine holds that "a defendant may not be convicted of multiple offenses that are based upon precisely the same physical act." *People v. Johnson*, 237 Ill. 2d 81, 97 (2010). Defendant concedes that this issue is not properly preserved. Violations of this rule may be addressed under "the second prong of the plain-error doctrine as an obvious error so serious that it challenges the integrity of the judicial process." *People v. Coats*, 2018 IL 121926, ¶ 10; see *People v. Johnson*, 200 Ill. App. 3d 1018, 1021 (1990) ("Multiple convictions for the same act are plain error."). Review is *de novo*. *Coats*, 2018 IL 121926, ¶ 12.

¶ 41    To determine whether there has been a violation of the one-act, one-crime doctrine, a court first determines whether a defendant has committed a single act or multiple acts. *Id.* If the latter, the court must then consider whether any of the offenses of which the defendant is convicted are lesser included offenses. *Id.* Multiple convictions based on a single act and convictions that are based on lesser included offenses may not stand. *People v. Rodriguez*, 169 Ill. 2d 183, 186 (1996). When the doctrine applies, "sentence should be imposed on the more serious offense and the less

serious offense should be vacated." *People v. Artis*, 232 Ill. 2d 156, 170 (2009). "Prejudice results to the defendant only in those instances where more than one offense is carved from the same physical act." *People v. King*, 66 Ill. 2d 551, 566 (1977).

¶ 42    Our supreme court has defined an "act" as "any overt or outward manifestation which will support a different offense." *Id.* Multiple convictions are permissible where "a common act is part of both offenses" (internal quotation marks omitted) (*Rodriguez*, 169 Ill. 2d at 188) or "part of one offense and the only act of the other offense" (*People v. Lobdell*, 121 Ill. App. 3d 248, 252 (1983)). A defendant's status, such as being a felon, "is not an 'act' but, rather, a state of being." *Coats*, 2018 IL 121926, ¶ 27.

¶ 43    As noted, defendant was convicted of four offenses: possession of a firearm while ineligible for a FOID card (count I) (430 ILCS 65/2(a)(1) (West 2020)); two counts of aggravated unlawful use of a weapon (counts II and III) (720 ILCS 5/24-1.6 (West 2020)); and a violation of the conditions of his bail bond (count IV) (*id.* § 32-10(a-5)). The parties agree that the second and third counts must be vacated, so we will not consider them further. Additionally, they agree that count I should remain.

¶ 44    Hence, we are left to consider count IV. The State argues that the offense of violating a condition of his bail bond required that defendant engage in an overt act beyond what was required to convict him of the other counts. The State and defendant agree that the first three counts were based on the act of possessing a firearm. However, according to the State, defendant had to engage in another overt act to violate his bail bond; specifically, defendant had to "obtain[ ] a bail bond and be[ ] admitted to bail." We disagree with the State's characterization of being admitted to bail as an overt act.

¶ 45     *Coats* provides guidance here. There, the supreme court addressed *People v. White*, 311 Ill. App. 3d 374, 386 (2000), a Fourth District case that held that the one-act, one-crime doctrine did not apply to the offenses of armed violence and unlawful possession of a weapon by a felon. The Fourth District stated, "Although both offenses shared the common act of possession of a weapon, armed violence required the additional act of possession of the drugs, and unlawful possession of a weapon by a felon *required the additional element of status as a felon*." (Emphasis added.) *Id.* The supreme court rejected this reasoning, stating, "A felon's status is not an 'act' but, rather, a state of being." *Coats*, 2018 IL 121926, ¶ 27. Thus, it is not part of the analysis "to determine whether a defendant's conduct consists of one act or several acts." *Id.*

¶ 46     Being admitted to bail is a similar sort of status. Felons typically may not possess a firearm. See 720 ILCS 5/24-1.1(a) (West 2020). Likewise, defendant was legally disqualified from possessing a firearm when he was admitted to bail. See *id.* § 32-10(a-5). Like one's status as a felon, this restriction resulted from an order of a court. See 725 ILCS 5/109-1(f), (g) (West 2020). Accordingly, we hold that being on bail, like being a felon, is not an overt act for the purpose of the one-act, one-crime doctrine. Thus, there is no separate act supporting a conviction of count IV

¶ 47                                  III. CONCLUSION

¶ 48     For the foregoing reasons, we reverse and remand. We note that jeopardy had attached in this case. See *People v. Bellmyer*, 323 Ill. App. 3d 269, 276 (2001) (holding that jeopardy attaches in a bench trial on stipulated evidence when the stipulation is submitted to the trial court). Generally, "[t]he double jeopardy clause does not preclude retrial when a conviction has been overturned because of an error in the trial proceedings, but retrial is barred if the evidence introduced at the initial trial was insufficient to sustain the conviction." *People v. Drake*, 2019 IL 123734, ¶ 20. In making this determination, evidence improperly admitted in the original trial may

be considered. *Id.* ¶ 21. These rules apply even in the case of structural error. See *People v. Richardson*, 2022 IL App (2d) 210316, ¶¶ 49-50. Having reviewed the stipulated evidence in this case, we conclude that it was clearly sufficient to support defendant's conviction, so retrial is not precluded by double jeopardy.

¶ 49       Reversed and remanded.

_____

*People v. Ryan*, **2024 IL App (2d) 220076**

_____

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, No. 20-CF-690; the Hon. David Kliment, Judge, presiding. |

_____

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Lilien, and Fletcher P. Hamill, of State Appellate Defender's Office, of Elgin, for appellant. |

_____

| | |
|---|---|
| **Attorneys for Appellee:** | Jamie L. Mosser, State's Attorney, of St. Charles (Patrick Delfino, Edward R. Psenicka, and David S. Friedland, of State's Attorneys Appellate Prosecutor's Office, of counsel, and Jaylaan Slaughter, law school graduate), for the People. |

_____